[No. D048652. Fourth Dist., Div. One. Oct. 25, 2006.]

NICKOLAS F., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

COUNSEL

Law Offices of Christopher R. Booth, Christopher R. Booth and Robert Gulemi for Petitioner.

John J. Sansone, County Counsel, John E. Phillips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Respondent.

No appearance for Real Party in Interest.

Steven J. Carroll, Public Defender, and Dana Feuling, Deputy Public Defender, for Minors.

OPINION

AARON, J.—

## INTRODUCTION

Nickolas F. seeks writ review of juvenile court orders made at the 12-month review hearing terminating family reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1] Nickolas contends that the juvenile court erred when it granted petitions for modification, filed pursuant to section 388, to deny him family reunification services. He maintains that under section 385, the juvenile court does not have the discretion to modify its previous orders unless the court first determines either that there has been a change of circumstances, or that new evidence justifies the modification, as required under section 388. Nickolas further contends that he did not receive reasonable reunification services as the court initially ordered, and that the court's modification of the disposition order substantially impaired his rights.

We conclude that the juvenile court has the statutory authority, pursuant to section 385, to change, modify, or set aside "[a]ny order made by the court in the case of any person subject to its jurisdiction" sua sponte,[2] after providing the parties with notice and the opportunity to be heard. (Le Francois v. Goel (2005) 35 Cal.4th 1094, 1104–1108 [29 Cal.Rptr.3d 249, 112 P.3d 636] (Le Francois).) The juvenile court's authority to modify a previous order that

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] "Sua sponte" means "[w]ithout prompting or suggestion; on its own motion" "[Latin 'of one's own accord; voluntarily']." (Black's Law Dict. (8th ed. 2004) p. 1464, col. 2.)

the court independently recognizes as having been erroneously, inadvertently or improvidently made is not contingent on a party seeking a modification pursuant to section 388.

We further conclude that the juvenile court has inherent authority, pursuant to California Constitution, article VI, section 1, to reconsider its prior interim orders when necessary to prevent a miscarriage of justice, provided that in so doing, the court does not violate the constitutional rights of the parties.

Although a section 388 petition for modification is the appropriate procedural mechanism to use when a party seeks a modification of a court order based on new evidence or changed circumstances, we are reluctant to endorse a procedure in which the court requests that a party file a petition pursuant to section 388 in order to allow the court to modify an order it considers to have been erroneously, inadvertently or improvidently made. Proceeding in this manner is particularly problematic where, as here, the evidence presented at the disposition hearing was sufficient to apprise the juvenile court that section 361.5, subdivision (b), (c) or (e) might apply to preclude a routine order for reunification services. However, we conclude that the court's denial of reunification services to Nickolas, through the procedural mechanism of a section 388 petition, did not result in a miscarriage of justice. Thus, any error was harmless. Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2005, Nickolas's sons, Joshua F. and Matthew G. (together, the children), who were then ages three years, and 18 months, respectively, were detained by the San Diego Health and Human Services Agency (Agency) after their maternal half brother tested positive for methamphetamine at birth. The Agency filed petitions pursuant to section 300, subdivision (b) alleging that there was a substantial risk that the children would suffer serious physical harm or illness due to their mother's drug use, unsanitary conditions in the home, and her inability to care for the children. The petitions further alleged that Nickolas was unable to protect and supervise the children.

In its jurisdiction and disposition report, the Agency reported that it had learned from E.G., the children's mother, that Nickolas was serving a five-year sentence in Arizona for abusing the children's paternal half brother. That child suffered a broken hip, collarbone and rib, and other injuries as a result of abuse by Nickolas. E.G. told the social worker that Nickolas had introduced her to methamphetamine use, and that he had physically abused her during their marriage. The Agency also reported that Nickolas had a criminal record that included charges or convictions for aggravated assault on a minor,

possession and use of a dangerous drug, unlawful sexual intercourse with a minor under age 14, oral copulation with a minor under age 16, and burglary.[3]

The Agency contacted Nickolas in the Arizona state prison system prior to the jurisdiction and disposition hearing. In a letter to the social worker dated April 1, 2005, Nickolas stated that he would be incarcerated until May or August 2008 and asked the Agency to consider placing Joshua with his mother.[4]

The Agency did not include Nickolas's expected release date in its report to the court. While the Agency did not develop a case plan for Nickolas, it did not explicitly recommend that the court deny Nickolas reunification services. At the disposition hearing, the court ordered the Agency to provide reunification services to the parents "consistent with their case plan(s)"[5] and specifically ordered the Agency to provide services to "Father [F.]."

In its six-month status review report, the Agency stated that it had had "no contact whatsoever" with Nickolas. It had not prepared a case plan for Nickolas, nor had it offered him services. In an addendum report prepared for the November 2005 six-month review hearing, the Agency included a letter from Nickolas dated November 6, 2005, in which he stated that he was scheduled to be released in August 2008, and again asked the Agency to evaluate his mother for placement of the children. Despite the Agency's report of having had no contact with Nickolas, the court found that reasonable services had been offered or provided to "the parent(s)," and continued services as previously ordered.[6]

---

[3] Apart from the May 2004 case in which Nickolas pled guilty to felony attempted abuse of a minor, we are unable to determine from the record whether Nickolas was convicted of the other criminal offenses set forth in the jurisdiction and disposition report.

[4] In her letter dated March 23, 2005, the social worker did not inform Nickolas that Matthew had been detained. E.G. initially alleged that another man was Matthew's father. At the detention hearing, the court made a nonprejudicial finding that Nickolas was Matthew's presumed father, pursuant to Family Code section 7611, subdivision (a). Several months later, paternity testing established that the man E.G. had initially named was not Matthew's father.

[5] The Agency had not developed a case plan for Nickolas prior to the disposition hearing, nor did it complete a case plan for him after the court ordered the Agency to provide reunification services to Nickolas. (See fn. 12, *post.*)

[6] The court's generalized finding that the Agency had provided reasonable services to both parents was apparently based on the extensive reunification services that had been provided to the children's mother. The better practice would be for the court to make separate findings as to the adequacy of reunification services offered or provided to each parent. (See, e.g., *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362 [52 Cal.Rptr.2d 474] [each reunification plan must be appropriate to the particular individual and based on the unique facts of that individual]; *In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].)

In April 2006, the case was assigned to a new social worker. The day before the scheduled 12-month review hearing, the social worker sent Nickolas a prison parenting packet and a letter inquiring about his access to programs and services at the facility in which he was incarcerated. In a letter to the social worker dated April 15, 2006, Nickolas provided information about programs that were available at the prison, and expressed his willingness to participate in services. He reiterated his wish to involve his mother in the children's care.

The social worker contacted Nickolas's mother, who was the guardian of his youngest son. She told the social worker that as a result of physical abuse, that child had suffered a skull fracture, had developed hydrocephalus,[7] and had been diagnosed with mild mental retardation.

In its April 2006 status review report to the court, the Agency recommended that the court terminate family reunification services and set a permanency plan hearing under section 366.26. E.G. had not resolved her substance abuse issues. Her cousin planned to adopt the children's maternal half brother and was interested in adopting Joshua and Matthew as well. E.G. believed the proposed adoption by a family member was in the children's best interests, and she did not intend to contest the Agency's recommendations.

At the 12-month review hearing, Nickolas moved for a directed verdict, arguing that the Agency had not met its burden to show that it had provided him reasonable reunification services. The court denied the motion. The court reasoned that even under the best circumstances, it would not be possible to return the children to Nickolas's custody, due to his incarceration. The court also determined that the Agency had provided services to Nickolas in that it had made efforts to locate Nickolas and to advise him of the children's status throughout the proceedings. The court found that under the totality of the circumstances, the Agency had provided services to Nickolas and that the services provided were reasonable.

Nickolas, through his counsel, objected to the finding that he had been provided reasonable services. Nickolas's attorney pointed out that at the disposition hearing, the court had specifically ordered the Agency to provide Nickolas reunification services, and argued that the Agency had a duty to

---

[7] Hydrocephalus is "an abnormal increase in the amount of cerebrospinal fluid within the cranial cavity that is accompanied by expansion of the cerebral ventricles, enlargement of the skull and especially the forehead, and atrophy of the brain." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 608, col. 2.)

follow the orders of the court. Counsel maintained that the evidence established that the Agency had not offered or provided reasonable reunification services to Nickolas, and pointed out that the court's orders requiring the Agency to provide services remained in effect because no other party had filed a formal petition pursuant to section 388 to modify the orders granting Nickolas reunification services.

Although the court believed its judgment as to the substantive issue was correct, it found that Nickolas's procedural objection had merit. The court continued the proceedings in order to allow the Agency time to file a petition for modification. Both the Agency and E.G. subsequently filed petitions pursuant to section 388 requesting that the court modify its disposition orders to deny reunification services to Nickolas. In her petition, E.G. alleged that there was new evidence in that, at the time of the disposition hearing, the court was not aware of the details of the crime for which Nickolas was incarcerated or his release date. She also argued that circumstances had changed because she now agreed to submit to the proposed adoption of the children by her cousin. E.G. asserted that providing reunification services to Nickolas would be detrimental to the children, and asked the court to deny Nickolas reunification services under section 361.5, subdivision (e)(1).[8] The Agency alleged in its petition that there was new evidence before the court because the court had not had information at the disposition hearing concerning "the exact nature" of Nickolas's crime or the length of his prison sentence in Arizona. The Agency requested that the court deny reunification services to Nickolas pursuant to section 361.5, subdivisions (b)(12)[9] and (e)(1).

In May 2006, at a combined hearing on the merits of the modification petitions and the continued 12-month review, the Agency presented evidence expanding on the minimal information it had presented to the court at the disposition hearing regarding Nickolas's conviction and incarceration. The

---

[8] "If the parent or guardian is incarcerated or institutionalized, the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, for children 10 years of age or older, the child's attitude toward the implementation of family reunification services, and any other appropriate factors." (§ 361.5, subd. (e)(1).)

[9] "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (12) That the parent or guardian of the child has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code." (§ 361.5, subd. (b)(12).)

At trial, due to the complexity of determining whether Nickolas's conviction in Arizona for attempted child abuse would qualify as a violent felony under the California Penal Code, the Agency withdrew its request for modification of the disposition order pursuant to section 361.5, subdivision (b)(12). (See *post*, pt. IIB., p. 107 & fn. 12.)

evidence established that Nickolas had assaulted his then four-month-old son, fracturing the child's ribs, arm and skull. The medical examination revealed that the child had multiple skull fractures that were in various stages of healing. As a result of complications from the most recent injuries, the child had suffered brain swelling that caused mental retardation. The child had to wear a brace to hold his skull together.

Nickolas was indicted on three counts of felony child abuse for causing serious physical injury to the child, and one count of felony child abuse for failing to obtain medical treatment for the child's injuries. After the suicide of the child's mother, who would have been a material witness at Nickolas's criminal trial, Nickolas pled guilty to one felony count of attempted child abuse, pursuant to a plea agreement. He was sentenced in February 2005 to five years in prison, with credit for time served, and eight months of community supervision.

After hearing this evidence, the court stated that at the time it ordered the Agency to provide reunification services to Nickolas, it was not aware of the grievousness of Nickolas's abuse of his son because the information the Agency presented at the disposition hearing was incomplete. The court determined that although the evidence pertaining to Nickolas's abuse of the children's half brother could have been known at the time of the disposition hearing, it was in fact not known. On this basis, the court concluded that the petitioners had met their burden to show that there was "new evidence," as required by section 388, subdivision (a). The court also found that the requested modification was in the children's best interests. Specifically, the court concluded that providing reunification services to Nickolas would be detrimental to the children because of their ages, the lack of a parent-child bond with Nickolas, the anticipated length of his incarceration, and the nature of Nickolas's crime against his other son. The court modified the disposition order to deny Nickolas reunification services under section 361.5, subdivision (e)(1), terminated family reunification services to E.G., and set a permanency plan hearing pursuant to section 366.26.

Nickolas petitions for review of the court's orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 38.1.[10]) This court issued an order to show cause, and the Agency responded. The parties waived oral argument.

## APPELLATE PROCEEDINGS

On September 1, 2006, this court asked the parties to submit simultaneous letter briefs within 10 days, addressing the following:

---

[10] All rule references are to California Rules of Court.

"Assuming arguendo that a section 388 petition was not the proper procedural mechanism by which to modify the court's disposition order under the particular circumstances in this case, is there constitutional or other statutory authority that would permit the juvenile court to modify its prior order?

"Did the juvenile court have the inherent authority to modify its disposition order sua sponte if it believed that order was erroneous, after providing the parties with notice and an opportunity to be heard?"

On September 12, 2006, we granted Nickolas leave to file a supplemental reply brief.

## DISCUSSION

### I

### *The Petition for Writ of Mandate Is Not Moot*

The Agency requests that Nickolas's petition be dismissed as moot. It argues that because the juvenile court did not explicitly order the Agency to continue to provide reunification services to Nickolas between the six-month and the 12-month reviews, the court effectively terminated Nickolas's reunification services at the six-month review hearing. The Agency posits that the court was not required to consider modifying the disposition order at the 12-month review hearing pursuant to section 388 because Nickolas was not entitled to receive reunification services after the six-month review hearing and that the petition for relief is therefore moot. We reject this argument.

■ Unless the court specifically modifies the terms and conditions of a parent's reunification services at the six-month review hearing, "any reunification services previously ordered shall continue to be offered to the parent . . . ." (§ 366.21, subd. (e); see *In re Alanna A.* (2005) 135 Cal.App.4th 555, 564 [37 Cal.Rptr.3d 579].) Here, pursuant to the court's order at the disposition hearing, the Agency had a continuing duty to develop a case plan for Nickolas and to offer or provide him reunification services during the second six-month review period. (See fn. 13, *post.*) For these reasons, the petition is not moot.

Nickolas contends that the court's finding that he was provided reasonable reunification services is not supported by substantial evidence. The Agency concedes that it did not provide Nickolas with reunification services, but argues that the court implicitly withdrew its finding that Nickolas was provided reasonable services when it asked the Agency to file a petition for

modification under section 388. (See *In re Alanna A., supra*, 135 Cal.App.4th at p. 563 & fn. 6.) Because we conclude that the court's modification of its disposition order to deny Nickolas reunification services, through the procedural mechanism of section 388, did not result in a miscarriage of justice (see pt. III, *post*), we need not address this issue.

## II

### *The Court Did Not Err in Modifying the Disposition Order to Deny Nickolas Reunification Services*

#### A. The Parties' Positions

Nickolas contends that the juvenile court abused its discretion when it granted the petitions for modification under section 388, because neither the Agency nor the children's mother presented any "change of circumstance or new evidence" as required by section 388, subdivision (a). Drawing an analogy to case law interpreting Code of Civil Procedure section 1008, subdivision (a), Nickolas argues that a petitioner who seeks modification of a previous order "must be held to a basic measure of diligence, and cannot introduce evidence at the eleventh hour that was available all along, to the unjust detriment of another party."

While the Agency concedes an initial lack of diligence, it argues that the information it presented to the court at the hearing for modification of the court's disposition orders nevertheless constitutes "new evidence" within the meaning of section 388, subdivision (a), and also maintains that the proposed modification was in the children's best interests. The Agency thus contends that the court correctly modified the disposition orders.

The Agency further argues that the juvenile court has the statutory authority, pursuant to section 385, to change, modify, or set aside any previous order, sua sponte. Citing *Case v. Lazben Financial Co.* (2002) 99 Cal.App.4th 172, 185 [121 Cal.Rptr.2d 405] (*Case v. Lazben*), the Agency also contends that in extraordinary circumstances, when necessary to avoid a miscarriage of justice, the California Constitution confers on the juvenile court the inherent authority "to repair an erroneous order or judgment," provided that in so doing, the court weighs and protects the constitutional rights of the parties.

Nickolas responds that the juvenile court may exercise the authority it is granted under article VI, section 1 of the California Constitution only in the absence of any previously established procedural rule, citing *In re Amber S.* (1993) 15 Cal.App.4th 1260, 1264 [19 Cal.Rptr.2d 404]. He argues that, by its express terms, section 385 limits the juvenile court's authority to modify

its prior orders to the procedural mechanism of a petition for modification filed pursuant to section 388, and notes that Code of Civil Procedure section 128, subdivision (a)(8) authorizes the juvenile court to correct only clerical errors on its own motion, as discussed in *Bloniarz v. Roloson* (1969) 70 Cal.2d 143, 148 [74 Cal.Rptr. 285, 449 P.2d 221]. Citing *Hess v. Gross* (1943) 56 Cal.App.2d 529, 532 [133 P.2d 1] and *Smith v. Superior Court* (1981) 115 Cal.App.3d 285 [171 Cal.Rptr. 387], Nickolas argues that the juvenile court did not have authority to modify the disposition order because the modification did not constitute the correction of a clerical error, and seriously prejudiced his constitutional interests in family reunification.

■ We examine these arguments, bearing in mind that "[t]he objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. [Citations.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826] (*Marilyn H.*).)

> B. *Under the Circumstances Presented in This Case,*
> *Section 388 Was Not the Appropriate Procedural*
> *Mechanism by Which to Modify the Disposition Order*

■ Section 388 applies when "[a]ny parent or other person having an interest" in a dependent child, or the child (collectively, party) seeks a modification of a previous order based on a change of circumstances or new evidence and the pertinent statutes do not otherwise provide for modification. (See *In re Lance V.* (2001) 90 Cal.App.4th 668, 675 [108 Cal.Rptr.2d 847]; *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 879 [101 Cal.Rptr.2d 187].) It is the appropriate procedural mechanism to use when a *party* seeks modification of a previous order. (See *Marilyn H., supra,* 5 Cal.4th at p. 305.) However, under the circumstances presented in this case, a section 388 petition was not the appropriate means by which to modify the disposition order.

At the 12-month review hearing, the juvenile court realized that even the minimal evidence pertaining to Nickolas's conviction for child abuse and his incarceration that was presented at the disposition hearing should have caused the court to examine the facts underlying the conviction, and determine whether providing reunification services to Nickolas would be detrimental to the children pursuant to section 361.5, subdivision (e)(1). We agree with the trial court's assessment that it improvidently directed the Agency to provide reunification services to Nickolas at the disposition hearing.

The information in the jurisdiction and disposition report concerning Nickolas's criminal history and incarceration should also have put the court

on notice that section 361.5, subdivision (b)(12) might apply to Nickolas, and that the court should not issue a routine order[11] that the Agency provide Nickolas reunification services. Rather, at a minimum, the court should have considered whether reunification was in the children's best interests pursuant to section 361.5, subdivision (c).

Section 361.5, subdivision (c) states in pertinent part: "The court *shall not order reunification* for a parent or guardian described in paragraph (3), (4), (6), (7), (8), (9), (10), (11), (12), (13), (14), or (15) of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (Italics added.) When this subdivision applies, the juvenile court lacks the authority to order reunification unless it expressly makes such a finding by the requisite standard of proof. (*Ibid.*)

Section 361.5, subdivision (b)(12) provides that reunification services need not be provided to a parent who has been convicted of a violent felony, as defined in Penal Code section 667.5. The definition of a "violent felony" includes rape, oral copulation by force, lewd acts on a child under the age of 14 years, and "[a]ny felony in which the defendant inflicts great bodily injury on any person other than an accomplice." (Pen. Code, § 667.5, subd. (c)(8).) " '[G]reat bodily injury' " means a significant or substantial physical injury. (Pen. Code, § 12022.7, subd. (f).)

The jurisdiction and disposition report included information that Nickolas had inflicted significant physical injury on the children's paternal half brother, including a broken hip, a broken collarbone and rib, and other fractures, and that Nickolas was currently incarcerated for that crime. Other information in the report suggested that Nickolas might have been convicted of unlawful sexual intercourse with a minor under age 14 and oral copulation with a minor under age 16.[12]

---

[11] Providing family reunification services to the parents or parent of a dependent child is the rule, not the exception. (*In re Alanna A., supra*, 135 Cal.App.4th at pp. 563–564; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 223 [33 Cal.Rptr.3d 337] ["unless limited exceptions apply, a parent is provided with services designed to reunify the family within a statutory time period"].)

[12] Section 361.5, subdivision (b)(6) provides that reunification services need not be ordered for a parent of a child adjudicated dependent pursuant to any subdivision of section 300 as a result of severe physical harm to the child, a sibling or a half sibling by a parent. Here, the Agency did not allege that the children were in need of the protection of the juvenile court pursuant to section 300, subdivision (j), due to Nickolas's severe physical abuse of their paternal half brother.

The facts of this case illustrate a significant "gap" in California statutory law involving the provision of reunification services to a parent who, as in this case, has inflicted significant and lifelong injuries on his or her child. Pursuant to federal law, a court may deny reunification

When information presented at the disposition hearing suggests that the court does not have the authority to order reunification pursuant to section 361.5, subdivision (c) unless the court makes an express finding by clear and convincing evidence that reunification is in the child's best interests, the juvenile court must not order reunification services without making the required finding. This is particularly true where, as in this case, the lack of a case plan indicates that the Agency has not yet completed its investigation and assessment.

The Agency has a duty to apprise the court of all relevant facts and circumstances when issuing reports. (§ 328; *In re Joshua G.* (2005) 129 Cal.App.4th 189, 197 [28 Cal.Rptr.3d 213], citing *In re John F.* (1994) 27 Cal.App.4th 1365, 1377–1378 [33 Cal.Rptr.2d 225].) "At each stage of the dependency proceeding, the social services agency is statutorily mandated to prepare social study reports and make recommendations to assist the court. (§§ 280, 281, 319, subd. (b), 358, subd. (b), 358.1, 361.5, subd. (c), 364, 365, 366.21, subds. (c), (e), (f), 366.22, subd. (a), 366.26, subd. (b).) In this role, the social services agency acts as an impartial arm of the court in assisting the court to carry out the Juvenile Court Law." (*In re Ashley M.* (2003) 114 Cal.App.4th 1, 7–8 [7 Cal.Rptr.3d 237], citing *In re Malinda S.* (1990) 51 Cal.3d 368, 377, fn. 8 [272 Cal.Rptr. 787, 795 P.2d 1244] and Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2003) § 2.63[1], pp. 2-121 through 2-122; see also §§ 309, 319, subd. (a).)

---

services to a parent who has "committed a felony assault that results in serious bodily injury to the child *or another child of the parent*." (42 U.S.C. § 671(a)(15)(D)(ii)(IV), italics added.) This fact may be determined by a court of competent jurisdiction. (*Id.*, § 671(a)(15)(D).) Thus, federal law does not impose a requirement that the child who is the subject of a dependency petition have been adjudicated dependent on grounds of physical abuse of a sibling, or that the parent have been convicted of a felony assault, prior to denying that parent reunification services.

However, in California, if a parent committed a felony assault causing serious bodily injury to another of his or her children, but pled guilty to a lesser offense (or if the related criminal proceedings were pending at the time of the disposition hearing), and/or grounds for jurisdiction over the dependent child did not include the serious physical abuse of the child's sibling by the parent, the juvenile court may not deny that parent reunification services pursuant to section 361.5, subdivisions (b) or (c). Further, if that parent is no longer (or not yet) incarcerated, the court might not have the discretion to deny reunification services to that parent pursuant to section 361.5, subdivision (e)(1), even if denial is otherwise indicated by that parent's previous abuse of a child. (See, e.g., Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2679 (1995–1996 Reg. Sess.) as amended May 14, 1996 [removing the requirement in §§ 300, subd. (f) and 361.5, subd. (b)(4) that a parent have been convicted in criminal court before the statutes applied at jurisdiction and disposition].)

Here, it is clear that Nickolas inflicted serious bodily injury on the children's paternal half brother. However, because this was not a jurisdictional ground on which the children were adjudicated dependent, section 361.5, subdivision (b)(6) did not apply.

The record in this case leaves no doubt that the evidence that was presented to the court at the section 388 hearing was available prior to the disposition hearing. Nickolas's crime, conviction and sentencing all preceded the children's detention. At the time of the disposition hearing, the Agency had in its possession information about Nickolas's conviction and his term of imprisonment, but failed to fully report that information to the court. The Agency did not request that the court determine whether providing services to Nickolas would be detrimental to the children under section 361.5, subdivision (e)(1), or whether section 361.5, subdivision (c) applied to prohibit the court from entering a routine order for reunification services for Nickolas.

The juvenile court has an obligation to ensure that the Agency, as an arm of the court, has followed required statutory procedures, which are designed to provide the court with the information and material it needs in order to make a reasoned and informed judgment.[13] (§§ 280, 281, 300.2, 350, subd. (a)(1).) In this case, the court belatedly, but independently, realized that the evidence presented at the disposition hearing, although minimal, was sufficient to apprise the court that it should not have issued a routine order for reunification services pursuant to section 361.5, subdivision (e)(1). In order to remedy this error, the court requested that the parties seek a modification pursuant to section 388 on the ground that there was new evidence pertinent to the issue. At the hearing on the section 388 petitions, the Agency presented facts that it had not previously presented to the court, such as the age of the child Nickolas assaulted, the full extent of the injuries the child suffered as a result of the assault, and the particulars of the criminal charges against Nickolas, his plea bargain, and his expected release date.[14]

---

[13] Recognizing that "the best practice [is] to investigate all issues thoroughly at the initial phase of the case," the Agency concedes that "[t]he services issue should have been addressed more thoroughly at the disposition phase of the case." County counsel explains that the field social worker did not review the court's orders and instead relied on the notes of the court officer, contrary to procedure.

[14] Nickolas contends that the appellate courts have not addressed the meaning of the phrase "new evidence" as used in section 388. He argues that in determining the meaning of "new evidence," this court should draw upon case law addressing the application of the phrase "new or different facts" to a motion for reconsideration in a civil proceeding. (Code Civ. Proc., § 1008, subd. (a); see generally *In re Francisco W.* (2006) 139 Cal.App.4th 695, 707, fn. 7 [43 Cal.Rptr.3d 171] [in the absence of a dispositive provision in the Welf. and Inst. Code, the reviewing court may look to provisions of the Civ. Code and Code Civ. Proc. for guidance].)

Appellate courts have held that in civil proceedings "[t]he burden under [Code of Civil Procedure] section 1008 is comparable to that of a party seeking a new trial on the ground of newly discovered evidence: the information must be such that the moving party could not, with reasonable diligence, have discovered or produced it at the trial." (*New York Times v. Superior Court* (2005) 135 Cal.App.4th 206, 212–213 [37 Cal.Rptr.3d 338], citing *Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1198 [69 Cal. Rptr. 2d 592]; see *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 689–690 [68 Cal.Rptr.2d 228].) The purpose of the rule is to limit the parties' ability to bring repetitive motions before the court. (*Le Francois, supra,* 35

■ Where, as here, the court independently recognizes that it improvidently directed the Agency to provide reunification services to a parent, requiring that a party file a petition under section 388 before the court may modify the order, or worse, requiring that the parties comply with the erroneous order, would constitute a waste of time and resources. (*Case v. Lazben, supra,* 99 Cal.App.4th at p. 187 ["Forcing the parties to proceed where there is recognized error in the case would result in an enormous waste of the court's and the parties' resources"].) We conclude that in dependency proceedings, when the court recognizes that a previous order was erroneously, inadvertently or improvidently granted, it is not necessary that a party file a section 388 petition in order to provide the court with the authority to modify that order.

### C. The Juvenile Court Has Both Statutory and Constitutional Authority to Modify Its Prior Orders Sua Sponte

■ All courts have inherent powers that enable them to carry out their duties and ensure the orderly administration of justice. The inherent powers of courts are derived from California Constitution, article VI, section 1, and are not dependent on statute. (*Le Francois, supra,* 35 Cal.4th at pp. 1101–1102; *Walker v. Superior Court* (1991) 53 Cal.3d 257, 266–267 [279 Cal.Rptr. 576, 807 P.2d 418]; *Case v. Lazben, supra,* 99 Cal.App.4th at p. 185; *In re Amber S., supra,* 15 Cal.App.4th at pp. 1264–1265.) The juvenile court derives its general judicial authority from the California Constitution. (*In re Amber S., supra,* at pp. 1264–1265.)

While article VI, section 1 of the California Constitution vests the court with inherent authority to decide controversies and control the proceedings, the Legislature may regulate the exercise of the court's constitutional powers by all reasonable means. (*Le Francois, supra,* 35 Cal.4th at pp. 1102–1103; *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 58–59 [51

Cal.4th at p. 1103.) In this case, there is no doubt that the information concerning Nickolas's crime and punishment was available long before the section 388 hearing was held and, therefore, that it would not qualify as "newly discovered evidence" within the meaning of Code of Civil Procedure section 1008.

However, in dependency proceedings, there is an important countervailing principle: The juvenile court must be able to consider the most complete and most pertinent information about a child's welfare in determining how best to protect that child. Whether the information could have been presented earlier if the party seeking modification had conducted a reasonably diligent investigation does not alter this basic precept. We are reluctant to adopt a rule that would hinder the juvenile court's ability to modify a prior order pursuant to section 388 when the court has determined that a petitioner has met his or her burden to show "new evidence" and that a modification is necessary to promote the welfare of the child. We are equally reluctant to approve a process that might excuse the Agency's or another party's less than reasonably diligent investigation before a disposition or review hearing. Since we decide this case on other grounds, we need not resolve this issue.

Cal.Rptr.2d 837, 913 P.2d 1046].) However, in exercising its power, the Legislature may not defeat or materially impair the court's exercise of its inherent constitutional authority to reconsider its own interim orders. (*Le Francois, supra,* at p. 1097; *People v. Bunn* (2002) 27 Cal.4th 1, 14–16 [115 Cal.Rptr.2d 192, 37 P.3d 380].) Such regulation violates the separation of powers doctrine embodied in the California Constitution. (*Le Francois, supra,* at pp. 1097, 1103, 1107.)

The juvenile court's jurisdiction is limited to hearing cases concerning delinquent and dependent children. The Legislature has vested the juvenile court with the authority to fashion orders concerning the welfare of a dependent or a delinquent child. (§§ 19, 202, 245.5; see §§ 300.2, 350, subd. (a).) Within its limited jurisdiction, the authority of the juvenile court is extensive: "In addition to all other powers granted by law, the juvenile court may direct all such orders to the parent, parents, or guardian of a minor who is subject to any proceedings under this chapter as the court deems necessary and proper for the best interests of or for the rehabilitation of the minor." (§ 245.5.) Recognizing the juvenile court's special role in dependency proceedings, the California Supreme Court has noted, "The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201 [51 Cal.Rptr.2d 866, 913 P.2d 1075].)

This general grant of authority is tempered by more specific statutes. A statutory mechanism is the preferred means by which to modify a prior order of the court. (See *In re Dennis H.* (2001) 88 Cal.App.4th 94, 102 [105 Cal.Rptr.2d 705].) The Legislature has defined the juvenile court's statutory authority to modify its previous orders in Welfare and Institutions Code, article 12, sections 385 through 391. (See *Marilyn H., supra,* 5 Cal.4th at p. 305 [briefly describing §§ 385–390].)[15]

Section 385 provides that any court order in a dependency case "may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article." Section 386 mandates that the court refrain from exercising its discretion under section 385 unless the court has provided prior notice of the application to the social worker and the child's counsel of record or, if there is no counsel of record, to the child and his parent or guardian.[16] As

---

[15] Sections 387, 389, 390, and 391 are not pertinent to the issues raised in this writ.

[16] Although section 386 mandates notice to a parent only when the child is not represented by counsel, when a modification of a prior order may affect the interests of the parent or the child, assuming parental rights have not been terminated, due process requires that the court provide the parent with notice and an opportunity to be heard. (*In re Kelley L.* (1998) 64

discussed in part I.B, *ante*, section 388 provides that a party may seek a modification of a previous order by filing a verified petition based on new evidence or changed circumstances.

Nickolas maintains that section 385 does not grant the juvenile court the authority to modify a previous order sua sponte. He argues that the phrase "subject to such procedural requirements as are imposed by this article" means that the court may not modify a prior order unless a party or interested person has filed a petition for modification pursuant to section 388. In support of this interpretation, he points to *Marilyn H.*, in which the California Supreme Court stated, "Section 385 clearly does not give the juvenile court the discretion to modify its previous order in the absence of compliance with the procedural requirements set forth in article 12, which includes section 388's requirement of filing a verified petition for modification based on changed circumstances." (*Marilyn H., supra*, 5 Cal.4th at p. 305.)

The California Supreme Court's holding in *Marilyn H.* was more nuanced than Nickolas posits. The phrase "subject to such procedural requirements as are imposed by this article" does not mean that the procedures set forth in section 388 are necessarily imposed on the court every time the court contemplates modifying a prior order. Further, to the extent the holding in *Marilyn H.* can be interpreted to preclude the juvenile court from modifying a prior order sua sponte, the validity of that reasoning has been disapproved by the more recent decision of the California Supreme Court in *Le Francois, supra*, 35 Cal.4th 1094.

In *Marilyn H.*, the parent asserted that even though section 366.26 expressly limits the actions the court may take at that hearing to select and implement the child's permanency plan, section 385 gives the juvenile court the inherent discretion to modify the prior order referring the case to a permanency plan hearing, and to consider returning the child to parental custody. (*Marilyn H., supra*, 5 Cal.4th at p. 300.) The California Supreme Court held that pursuant to the statutory framework of Welfare and Institutions Code, article 12, when a parent asks the court to modify a previous order based on changed circumstances, the parent must proceed under section 388. (*Marilyn H.*, at p. 305.) Thus, the holding of *Marilyn H.* applies to a request by *a parent* that the court modify a prior order, and does not apply when the court determines on its own that modification of a prior order is required.

---

Cal.App.4th 1279, 1285 [75 Cal.Rptr.2d 762]; see *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 70 S.Ct. 652]; § 290.2; rules 1431(c), 1432(e), 1407(e); but see, e.g., *In re Natasha A.* (1996) 42 Cal.App.4th 28, 34 [49 Cal.Rptr.2d 332] [under § 386, the juvenile court is forbidden to change, modify, or set aside its previous orders without advance notice to the minor and to the Agency].)

The difference between Nickolas's argument and the California Supreme Court's holding in *Marilyn H.* becomes evident when both are reduced to syllogisms. Nickolas argues:

—Section 385 requires that the court follow such procedures as are imposed by Welfare and Institutions Code, article 12.

—Section 388 describes a procedural requirement that is imposed by Welfare and Institutions Code, article 12.

—Therefore, the court must follow the procedure set forth in section 388.[17]

However, the *Marilyn H.* court reasoned:

—Section 385 requires that the court follow such procedures as are imposed by Welfare and Institutions Code, article 12.

—Section 388 describes a procedural requirement that is imposed by Welfare and Institutions Code, article 12 when a party seeks a modification of a prior order based on new evidence or changed circumstance.

—Therefore, the court must follow the procedure set forth in section 388 when a party seeks a modification of a prior order based on new evidence or changed circumstance. (*Marilyn H., supra,* 5 Cal.4th at p. 305.)

When the juvenile court contemplates modifying a previous order, either pursuant to a request by a party or on the court's own motion, section 385 does not impose any particular procedural requirement described in Welfare and Institutions Code, article 12. Rather, as indicated by the phrase *"subject to such procedural requirements* as are imposed by this article," the type of procedural mechanism required by section 385 depends on the type of modification sought. (§ 385, italics added.) The use of the word "such" means that the procedural requirement is "definite but not specified." (Random House Dict. (2d ed. 1993) p. 18199, col. 3; see also Black's Law Dict. (8th ed. 2004) p. 1473, col. 2 ["[o]f this or that kind"].) By its terms, section 388 applies only when *a party* petitions the court for modification based on new

---

[17] The form of this syllogism falls into the logical fallacy known as the "fallacy of the undistributed middle." (See, e.g., *Spencer v. Tex.* (1967) 385 U.S. 554, 578 [17 L.Ed.2d 606, 87 S.Ct. 648] (dis. opn. of Warren, C. J.); see generally Lind, Logic and Legal Reasoning (2001) pp. 130–131, 133–135.) The fallacy is Nickolas's reasoning that section 388 encompasses everything the court does pursuant to section 385, with respect to the procedures set forth in Welfare and Institutions Code, article 12, when in fact it does not. (See, e.g., §§ 387, 388, 390 [imposing different procedural requirements depending on the type of modification sought].)

evidence or changed circumstances. Nothing in *Marilyn H.* or in the plain language of section 385 indicates that the Legislature intended to limit the juvenile court's authority to reconsider its previous orders to circumstances in which a party has filed a petition pursuant to section 388.

This conclusion is consistent with the California Supreme Court's reasoning in *Le Francois*. In that case, the court rejected the argument that Code of Civil Procedure section 437c, subdivision (f)(2), which governs motions for summary judgment, and Code of Civil Procedure section 1008, which generally governs procedures for reconsideration of any previous interim orders, prohibit the court from reconsidering its previous interim orders on its own motion.[18] The *Le Francois* court held that statutes that deal with reconsideration of motions may constitutionally limit the ability of the *parties* to file repetitive motions, but may not impede the *trial court's* ability to reconsider its prior interim orders on its own motion so that it may correct its own errors. (*Le Francois, supra,* 35 Cal.4th at pp. 1108–1109.) The court reasoned that if the statutes at issue were interpreted to limit the trial court's authority, the statutes would " 'directly and materially impair and defeat the court's most basic functions, exercising its discretion to rule upon controversies between the parties and ensuring the orderly administration of justice,' " and would thus violate the separation of powers doctrine embodied in the California Constitution. (*Le Francois, supra,* at pp. 1104–1105, quoting *Case v. Lazben, supra,* 99 Cal.App.4th at p. 185 [" 'Miscarriage of justice results where a court is unable to correct its own perceived legal errors' "].)

The California Supreme Court's rationale in *Le Francois* applies with equal force to Nickolas's argument that section 385 limits the court's ability to reconsider its prior rulings sua sponte. Code of Civil Procedure section 1008 and Welfare and Institutions Code section 385 are similar in that each governs procedures for reconsideration of previous interim orders. Interpreted as Nickolas suggests, section 385 would significantly diminish the juvenile court's general authority to ensure the orderly administration of justice, and would undermine the court's statutory authority to direct such orders as the

---

[18] The *Le Francois* court emphasized that its holding applied only to interim orders of the court. (*Le Francois, supra,* 35 Cal.4th at p. 1105, fn. 4.) In dependency proceedings, until jurisdiction is dismissed, dependency proceedings are ongoing. (See, e.g., *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1406, fn. 6 [22 Cal.Rptr.2d 50] [as a practical matter, the judgment terminating parental rights is the final decision in the dependency process].) In order to allow a party to appeal an adverse jurisdiction or disposition ruling, section 395 provides that a party may appeal from a disposition order "in the same manner as any final judgment." (See *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 [65 Cal.Rptr.2d 913].) However, although a disposition order is treated as a final judgment for purposes of appeal, it is not the final decision in dependency proceedings. For example, the provision of reunification services to a parent at disposition remains subject to modification by the court, with some limitations, until family reunification is achieved or the case is referred to a permanency plan hearing. (*In re Alanna A., supra,* 135 Cal.App.4th at pp. 564–565.)

court "deems necessary and proper for the best interests" of the dependent child. (§ 245.5.) A legislative restriction of a juvenile court's ability to reconsider its own rulings sua sponte would impair and defeat the juvenile court's most basic functions: to meet its special responsibility to determine the best interests of the dependent child, to exercise its discretion to rule upon controversies among the parties, and to ensure the orderly administration of justice. (Cf. *Le Francois, supra,* 35 Cal.4th at p. 1104.)

Under Nickolas's reading, if a juvenile court realizes that it has misapplied the law, or that the court's processes have otherwise been deficient,[19] the court " 'is prohibited from revisiting its ruling . . . no matter how obvious its error or how draconian the effects of its misstep.' " (*Le Francois, supra,* 35 Cal.4th at p. 1105, quoting *Case v. Lazben, supra,* 99 Cal.App.4th at p. 185.) If section 385 were interpreted to limit the court's ability to reconsider its own ruling, it would violate the separation of powers doctrine embodied in the California Constitution (cf. *Le Francois, supra,* at pp. 1104–1105) and would leave the juvenile court without any statutory authority by which to correct its own errors on its own motion.

In an effort to avoid constitutional difficulties, Nickolas posits that the juvenile court has the statutory authority to correct its previous orders, on its own motion, pursuant to Code of Civil Procedure section 128, subdivision (a)(8), but contends that this authority is limited to the correction of clerical errors. The argument that Code of Civil Procedure section 128, subdivision (a)(8) applies to modifications of prior orders in juvenile court is without merit.

This court has previously held that Code of Civil Procedure section 128, subdivision (a)(8) is inapplicable in dependency proceedings at the trial court level. (*In re Joshua G., supra,* 129 Cal.App.4th at p. 198.) Dependency proceedings are special proceedings that are governed, in general, by their own rules and statutes. (§ 300 et seq.; rule 1400 et seq.; *In re Chantal S., supra,* 13 Cal.4th 196.) Unless made expressly applicable, statutes that govern civil cases do not apply to dependency actions. (*In re Joshua G., supra,* at p. 198; *In re Daniel S.* (2004) 115 Cal.App.4th 903 [9 Cal.Rptr.3d 646].) Further, Nickolas ignores rule 1430(f), which provides that, pursuant to section 385, the juvenile court may correct clerical errors in judgments, orders, or other parts of the record on the court's own motion, and that such corrections may be entered nunc pro tunc.[20]

---

[19] In some matters, the Agency acts as an arm of the court. (*In re Ashley M., supra,* 114 Cal.App.4th at pp. 7–8.)

[20] In *In re Eugene R.* (1980) 107 Cal.App.3d 605, 613 [166 Cal.Rptr. 219], a juvenile delinquency case, this court held that section 775 limited the court's authority to modify its previous orders sua sponte to the correction of clerical error, as provided by former

We conclude that the juvenile court has the authority pursuant to section 385 to change, modify or set aside its prior orders sua sponte. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1297 [13 Cal.Rptr.3d 786, 90 P.3d 746] ["Section 388 allows any parent to petition the juvenile court and section 385 allows the court *on its own motion* to change, modify, or set aside any order previously made by the court" (italics added)]; *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 512 [22 Cal.Rptr.2d 443] ["section 385 gives the juvenile court continuing jurisdiction to modify its dependency orders sua sponte"].) Under this section, the juvenile court may modify an order that contains a clerical error, but may also reconsider the substance of a previous order the court considers to have been erroneously, inadvertently or improvidently granted. (Rule 1430(f); see *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450 [63 Cal.Rptr.2d 513] [juvenile court had authority to correct its own erroneous ruling].) In circumstances such as are presented in this case, section 385 is the procedural mechanism by which the juvenile court may modify a previous order, sua sponte, in dependency proceedings.

### D. The Juvenile Court Also Has Inherent Authority Under the California Constitution to Modify Its Prior Orders Under Extraordinary Circumstances

The Constitution vests each branch of the government with certain core or essential functions that may not be usurped by another branch. (*Le Francois, supra,* 35 Cal.4th at p. 1097; *People v. Bunn, supra,* 27 Cal.4th 14–16.) The core function of the court is to decide controversies between the parties and to ensure the orderly administration of justice. (*Case v. Lazben, supra,* 99 Cal.App.4th at p. 184.) This power is " 'not confined by or dependent on statute' " (*Id.* at p. 185, quoting *Walker v. Superior Court, supra,* 53 Cal.3d at p. 267.) "[T]he court, by virtue of its status as one of the three constitutionally designated branches of government, has the power to act even in the absence of explicit constitutional or legislative authorization." (*Superior Court v. County of Mendocino, supra,* 13 Cal.4th at p. 57; see also *People ex rel. Morgan v. Hayne* (1890) 83 Cal. 111, 118–119 [23 P. 1].)

---

rule 1391(d). Section 385 is derived from section 775 and they are identical to each other. (Stats. 1976, ch. 1068, § 12, p. 4778; cf. § 385 with § 775.) Former rule 1391(d), now rule 1430(f), applies to modifications made pursuant to sections 385 and 775. (Rule 1391, repealed eff. July 1, 1989; rule 1430, adopted eff. Jan. 1, 1991, as amended eff. Jan. 1, 2001.) The holding in *Eugene R.* that the juvenile court did not have the inherent authority or statutory authority pursuant to section 775, to modify a previous order on its own motion has been called into question. (See, e.g., *Le Francois, supra,* 35 Cal.4th at pp. 1104–1105; *Case v. Lazben, supra,* 99 Cal.App.4th at p. 185.) To the extent *Eugene R.* is interpreted to apply to dependency cases, we decline to follow the holding.

While Nickolas concedes that the juvenile court might have the constitutional authority to modify a previous order when necessary to prevent a "miscarriage of justice," he asserts that the court may not use such constitutional authority to correct an error of judgment. Specifically, Nickolas argues that the court may not invoke this authority when, as here, such modification affects his constitutional interest in maintaining his parental rights and continuing his relationships with his children. Nickolas contends that the inherent power of the court to adopt an innovative rule or procedure applies only where the Legislature has not provided a statutory means by which the court may act, and that "before improvising a procedure in juvenile dependency proceedings, the court must consider the primary objective of the proceeding, which is the promotion of the best interests of the child, but it must also weigh and protect the constitutional rights of the parents which necessarily are implicated." (*In re Amber S., supra,* 15 Cal.App.4th at p. 1265.)

In *In re Dakota H., supra,* 132 Cal.App.4th at page 223, this court described the constitutional rights and interests that are at stake in a dependency proceeding: "A parent's interest in the companionship, care, custody and management of his or her children is a fundamental civil right. (*In re B.G.* (1974) 11 Cal.3d 679, 688 [114 Cal.Rptr. 444, 523 P.2d 244].) Children, too, have a compelling independent interest in belonging to their natural family. (*Adoption of Kay C.* (1991) 228 Cal.App.3d 741, 749 [278 Cal.Rptr. 907].) In addition, each child has a compelling interest to live free from abuse and neglect in a stable, permanent placement with an emotionally committed caregiver. (*In re David B.* (1979) 91 Cal.App.3d 184, 192–193 [154 Cal.Rptr. 63].) The governmental interest in a child's welfare is significant. '[T]he welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect.' (*In re Marilyn H.*[, *supra*], 5 Cal.4th [at p.] 307 . . . , citing *In re David B., supra,* 91 Cal.App.3d at pp. 192–193, and *Stanley v. Illinois* [(1972) 405 U.S. 645, 649 [31 L.Ed.2d 551, 92 S.Ct. 1208]].)"

Assuming arguendo that there is no applicable statutory mechanism by which the court could properly have modified the disposition order, in this case, the court nevertheless had inherent authority to make such a modification to avoid a miscarriage of justice. The modification of the disposition order in this case meets the stringent constitutional standards that a court must meet when it exercises its inherent authority under the California Constitution.

Before modifying the disposition order, the juvenile court provided Nickolas with notice and an opportunity to be heard, including the right to present evidence and to confront witnesses regarding the provision of reunification

services that might facilitate his ability to maintain his fundamental interest in his relationships with his children. The court weighed the children's best interests, and in particular, their interest in a stable, permanent home, against Nickolas's fundamental interest in parenting his children. In doing so, the court considered Nickolas's past actions as a parent, the nature of his existing relationships with the children, and the likelihood that reunification services would result in family reunification within the statutory limitations on the length of time children may remain in temporary placement. (§ 366.21, subd. (g)(1).) Further, Nickolas remained free to participate in services offered at the facility in which he was incarcerated and to present evidence of changed circumstances to the court, through the mechanism of section 388, at the section 366.26 hearing. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 750 [110 Cal.Rptr.2d 828, 28 P.3d 876]; *Marilyn H., supra*, 5 Cal.4th at p. 309 [availability of § 388 protects a parent's substantive and due process rights in the parent/child relationship].) The court thus safeguarded Nickolas's rights to procedural and substantive due process.

Reunification services are a benefit; a parent is not constitutionally entitled to services. (*Renee J. v. Superior Court, supra*, 26 Cal.4th at p. 750; *In re Alanna A., supra*, 135 Cal.App.4th at p. 563.) While "[p]arenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood" (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514]), it is difficult to envision an act more incompatible with parenthood than a parent's repeated, intentional infliction of serious injuries on his or her child, as occurred in this case. The law does not require a futile act. (See *People v. Sandoval* (2001) 87 Cal.App.4th 1425, 1438 [105 Cal.Rptr.2d 504].) Delaying the selection and implementation of the children's permanency plan in order to provide reunification services to a parent who is not entitled to receive them[21] and who, due to the length of his incarceration, would not be in a position to reunify with his children, would constitute a miscarriage of justice. (Cal. Const., art. VI, § 13.)

III

*The Juvenile Court's Modification of the Disposition Order*
*Through the Procedural Mechanism of Section 388 Did Not*
*Result in a Miscarriage of Justice*

Whether an order should be modified rests within the sound discretion of the juvenile court. Its decision will not be disturbed on appeal absent a clear

---

[21] See section 361.5, subdivision (c); title 42 United States Code section 671(a)(15)(D)(ii)(IV).

abuse of discretion. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297].) While the abuse of discretion standard gives the trial court substantial latitude, "[t]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' " (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) "Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*Ibid.*) With respect to challenged factual findings, a reviewing court will affirm " 'if there is any *substantial* evidence to support the trial court's findings,' i.e., 'if the evidence is reasonable, credible and of solid value . . . .' [Citation.]" (*In re Baby Girl M.* (2006) 135 Cal.App.4th 1528, 1536 [38 Cal.Rptr.3d 484].)

The court's finding that providing reunification services to Nickolas would be detrimental to the children is supported by the anticipated length of Nickolas's incarceration, his minimal contact with the children before he was incarcerated, the severe injuries Nickolas inflicted on his infant son, the chronic nature of Nickolas's abusive acts, and the intensive treatment that would be required to resolve the risk Nickolas presents to the children's physical safety.[22] Other factors supporting the validity of the court's modification of the disposition order include the children's attenuated relationships with Nickolas, the availability of a safe, permanent home for the children, the view of the children's mother that the proposed adoptive placement was in their best interests, and the inference that Nickolas would not be in a position to reunify with the children even if he were provided reunification services for a period of six months.

 We conclude that the juvenile court's determination of the merits underlying the modification of the disposition order was fundamentally sound. A trial court's judgment may not be set aside for procedural error unless the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) If the court had made the modification in this case sua sponte, through either its statutory authority pursuant to section 385, or its constitutional authority under California Constitution, article VI, section 1, rather than pursuant to the parties' petitions for modification under section 388, the result would have been the same. The procedural error does not affect the validity of the court's ruling, and there has been no miscarriage of justice. We therefore decline to grant the relief petitioner requests.

---

[22] Intensive therapeutic services were not available at the facility in which Nickolas was incarcerated.

## DISPOSITION

The petition is denied.

McConnell, P. J., and Huffman, J., concurred.

On November 11, 2006, the opinion was modified to read as printed above.