Filed 3/17/14  In re S.A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.A., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>T.B.,<br><br>     Defendant and Appellant. | E059250<br><br>(Super.Ct.No. J241609)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Brent Riggs, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Danielle E. Wuchenich and Jamila Bayati, Deputy County Counsel, for Plaintiff and Respondent.

T.B. (hereafter mother) appeals an order terminating her parental rights to her daughter, S.A.[1]  Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

One-year-old S.A. was detained on November 10, 2011, when the Department of Children and Family Services (CFS) was alerted that S.A.'s parents had been arrested for possession of heroin and for child cruelty with the possibility of injury or death.  The parents' home was dirty, with trash piled up by the front door and spoiled food in the kitchen, and lacked working utilities.  Deputies reported drugs and drug paraphernalia throughout the home, including fresh heroin residue and a white powdered substance, as well as open alcohol containers, all accessible to S.A.  Equipment for growing marijuana, located in the bathroom, was also accessible to S.A.  The paternal grandmother, who was present when the social worker arrived at the home, reported that the father was bipolar and that he self-medicated with marijuana.  She was not aware of his heroin use.  The maternal grandmother was also present.  Both grandmothers reported that mother used marijuana occasionally.  S.A. appeared healthy and happy, with no marks or bruises, and she appeared to be bonded to both grandmothers.

---

[1]  S.A.'s father is not a party to this appeal.

2

Mother reported that she worked at a 99-cent store.  Father was the main caregiver while mother was at work.  Mother denied any substance abuse.  Father admitted using both marijuana and heroin.  Mother reported that she was aware of his drug use but that she kept S.A. away from the "chemicals."

A petition pursuant to Welfare and Institutions Code section 300 was filed on November 14, 2011.[2]  Pursuant to section 300, subdivision (b), the petition alleged failure to protect, with the substantial risk that S.A. had suffered or would suffer serious physical harm or illness, "as evidenced by the child being unsupervised or inadequately supervised on the evening of November 9, 2011"; that the parents had a substance abuse problem which interfered with their ability to adequately and appropriately parent S.A.; and that the home was an unfit habitation, placing S.A. at risk.  Pursuant to section 300, subdivision (g), the petition alleged that the parents had left S.A. with no provision for support upon their arrest.

S.A. was detained in the home of the paternal grandparents.  Reunification services were ordered; however, mother remained in custody as of the date of the detention hearing.

Mother submitted on the petition.  The court found the section 300, subdivision (b) allegations of the petition true, as amended, and struck the subdivision (g) allegations.

_____

[2] All further statutory citations refer to the Welfare and Institutions Code.

In its report for the six-month review hearing, CFS recommended termination of services and setting a permanency planning hearing pursuant to section 366.26. The social worker reported that although both parents had completed six months of substance abuse treatment, they had not shown that they had benefitted because they admitted to her that they "drink beers." She stated that both lacked motivation and lacked suitable and stable housing. Father remained unmedicated for his bipolar condition. The social worker did not believe that those concerns would change if another six months of services were offered. Mother had pleaded guilty to misdemeanor willful cruelty to a child and felony possession of a controlled substance, and was granted 36 months of formal probation. The social worker believed that she was motivated to attend substance abuse counseling only because it was a term of her probation and she did not want to return to jail. However, mother was also voluntarily attending individual therapy and was also attending group therapy. She had begun but not completed a 12-week parenting class.

At the six-month review hearing, the court found that it was not in S.A.'s best interest to consider termination of parental rights at that time. The court ordered continued services and visitation. S.A. remained placed with her paternal grandparents.

For the 12-month review hearing, CFS again recommended termination of services. The social worker reported that neither parent had completed any services since the last reporting period. She opined that they were unmotivated and that they appeared to "think that the court timelines do not apply to them." She reported that the risk to S.A.

4

had not diminished. The social worker also reported that mother *had* completed a parenting class and had completed outpatient substance abuse classes, and that all of her drug tests were negative. However, mother had admitted to the social worker that she "had been drinking alcohol while in her treatment program as recent[ly] as three (3) weeks before" so advising the social worker. Moreover, she had been arrested for drinking alcohol in violation of her probation. The parents had been living with mother's father until he kicked them out of the house, and then lived with paternal relatives. Both were unemployed. The social worker concluded that neither parent had benefitted from the services they had completed.

In an addendum report, the social worker reported that the parents had failed to follow through with reenrolling in their programs "until just recently." Because S.A. was under three years old when she was detained, the parents would need to exceed statutory timelines in order to show benefit from their services.

At the 12-month review hearing, the court found that the parents had failed to participate regularly and make substantive progress in their treatment plan. The court terminated services and set a section 366.26 hearing to determine a permanent plan for S.A. Mother was advised of her right to challenge the decision by writ. We take judicial notice that mother did not file a writ petition.

Shortly before the section 366.26 hearing, mother filed a petition for modification of the order terminating her services, pursuant to section 388. She stated that she had by then completed drug and alcohol treatment and was participating in aftercare and

5

consistently testing clean. She stated that she had almost completed a 52-week parenting class and was attending 12-step meetings. She stated that she had been visiting S.A. regularly and that the visits were positive. She asserted that she and S.A. had a close bond and that it would be in S.A.'s best interest to be raised by her mother. She also stated that she had stable housing.[3]

The court ordered a hearing, which was held concurrently with the section 366.26 hearing. Ultimately, the court denied the section 388 petition and terminated parental rights, establishing a permanent plan of adoption by the paternal grandparents.

Mother filed a timely notice of appeal.

## DISCUSSION

### 1.

### MOTHER'S FAILURE TO ASSERT THAT THE COURT SHOULD TERMINATE JURISDICTION FORFEITED APPELLATE REVIEW OF THE ISSUE

The sole basis for dependency jurisdiction in this case was section 300, subdivision (b). As pertinent here, subdivision (b) provides that a juvenile court may exercise jurisdiction if "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or

_____

[3] Mother asks us to take judicial notice that she was living with her father and that she had informed the social worker that her father, who is bipolar, was taking medication for that condition. Those facts are stated in the status review report prepared for the six-month review hearing. Accordingly, judicial notice is neither required nor appropriate.

her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . . *The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness.*"  (Italics added.)

Mother contends that the juvenile court's order terminating parental rights should be reversed because the juvenile court "should have sua sponte considered the continuing need for the dependency under [section] 300, subd[ivision] (b)'s last sentence."  She contends that as of the section 366.26 hearing, the evidence showed that S.A. no longer needed protection from any risk of suffering serious physical harm or illness because the conditions that led to the dependency no longer existed.

A juvenile court has both statutory and constitutional authority to reconsider and modify a prior ruling, either on request of a party or on its own motion.  (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 110-118 (especially pp. 111-112 & 116); Cal.

Const., art. VI, § 1; § 385.[4]) Section 385 provides, however, that this authority is subject to any applicable procedural requirement set forth in article 12 of the Welfare and Institutions Code. In *In re Marilyn H*. (1993) 5 Cal.4th 295, the California Supreme Court held that if a parent wants the court to consider, at a section 366.26 hearing, whether return to parental custody is appropriate, the parent must comply with section 388, which requires a parent to file a verified petition showing either new evidence or changed circumstance and showing that the requested change is in the child's best interest. (§ 388, subd. (a)(1); *In re Marilyn H.,* at pp. 305-306.)

In *Nickolas F. v. Superior Court*, *supra*, 144 Cal.App.4th 92, the court held that *In re Marilyn H.* applies only to a parent's request for reconsideration and not to a juvenile court's authority to reconsider the evidence on its own motion. The court in *Nickolas F.* noted that because section 388 expressly applies only to a party,[5] the

_____

[4] "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article." (§ 385.)

[5] "*Any parent or other person having an interest in a child who is a dependent child of the juvenile court* or a nonminor dependent as defined in subdivision (v) of Section 11400, or the child himself or herself or the nonminor dependent through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child or the nonminor dependent, shall state the petitioner's relationship to or interest in the child or the nonminor dependent and shall set forth in concise language any change of circumstance or new evidence that is alleged to

*[footnote continued on next page]*

8

procedural requirements of section 388 do not limit the court's ability to reconsider on its own motion the evidence supporting continued dependency. (*Nickolas F. v. Superior Court*, at pp. 112-116.) Accordingly, mother contends, the juvenile court had the authority to reconsider its prior ruling terminating mother's services and could have concluded that the evidence did not support a finding that S.A. was at continuing risk of serious physical harm or illness based on the sustained allegations of the petition. Even if this is true, however, it does not follow that the court had a duty to do so sua sponte. Mother has cited no authority to that effect, and we have not discovered any such authority.

Mother appears to suggest that the lack of evidence of any such risk operated to deprive the court of continuing jurisdiction. This is of course not the case. "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of . . . authority over the subject matter or the parties. [Citation.]" (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288.) In contrast, "where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites," an erroneous order is said to be in excess of the court's jurisdiction. (*Ibid.*) An order by a court which

*[footnote continued from previous page]*
*[footnote continued from previous page]*
require the change of order or termination of jurisdiction." (§ 388, subd. (a)(1), italics added.)

9

lacks subject matter jurisdiction is void, while an act in excess of jurisdiction is merely voidable. (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1088.) Moreover, a claim that does not concern the trial court's fundamental subject matter jurisdiction is waived if not timely asserted. (*Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1531.) Accordingly, because the juvenile court had subject matter jurisdiction, mother was required to assert that dependency jurisdiction was no longer warranted because the evidence showed that S.A. was not at risk of serious physical harm or illness if she wished the juvenile court to rule on that contention. Because she did not do so, and because the court had no sua sponte duty at a section 366.26 hearing to assess whether S.A. was at risk of serious physical injury or harm, the issue has not been preserved for appellate review.

2.

## DENIAL OF MOTHER'S SECTION 388 PETITION WAS NOT AN ABUSE OF DISCRETION

Next, mother contends that the juvenile court abused its discretion in denying her section 388 petition for modification of the order terminating services.

A parent seeking modification of a prior order pursuant to section 388 has the burden of proving the existence of either new evidence or changed circumstances and proving that the proposed change is in the child's best interest. (§ 388, subd. (a); *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) We review an order denying a section 388 petition for abuse of discretion. (*In re Stephanie M.*, at pp. 318-319.)

10

Here, mother alleged in her petition that S.A. should be returned to her care and custody or that reunification services should be reinstated because since the court terminated her reunification services, she had completed three months of drug and alcohol treatment, was participating in aftercare, had tested clean for all substances and was attending 12-step meetings, and had almost completed a 52-week parenting class. Further, she was visiting S.A. regularly and the visits were positive, and she had stable housing. After a hearing at which mother testified, the juvenile court denied the petition because mother had failed to demonstrate a true change of circumstances. The court stated that mother "had many years of substance alcohol abuse" (*sic*) and that she had not yet completed an alcohol or substance abuse program. Moreover, it held, mother was not seeking return of the child at that point, but merely more services to "help her along this path."[6] The court held that granting the petition would not be in S.A.'s best interest.

Mother asserts that this was an abuse of discretion because she had "removed the problems that brought [S.A.] into the dependency system." She was no longer with the child's father and had thus eliminated the problem of placing S.A. at risk through being in a home where the child had access to heroin; she asserts that there never was evidence that she had an alcohol or substance abuse problem; and she was no longer living in an unsanitary home. The problem with mother's analysis is that none of this was the basis

---

[6] The written petition did seek return of the child to mother's custody. However, mother's attorney argued solely for reinstatement of services. Accordingly, the court could properly deem the request for return withdrawn.

of her petition. Her petition and the evidence she adduced in support of it went to show that she had finally seen the light when her services were terminated and that she had been working on her own to complete her case plan. Moreover, rather than denying that she ever had an alcohol problem as she does now, she *admitted* that alcohol was "definitely the substance that I have problems with" and stated that she was addressing it. In ruling on a section 388 petition, the juvenile court is not required to address issues not raised by the petitioner. In effect, mother is arguing that the court had a duty to conduct an independent examination of all of the evidence to determine whether services should be reinstated, rather than confining its assessment to the petitioner's argument and evidence. Mother has not cited any authority for this proposition, and again, we have found none. On the contrary, the burden is on the party requesting modification to prove changed circumstances and that the proposed modification would be in the child's best interest. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.)

3.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Mother contends that her attorney deprived her of her statutory right to the effective assistance of counsel in connection with the section 388 petition when counsel failed to argue for S.A.'s return to mother's custody. She contends that return of the child was the only legally available remedy because the time for reunification services had passed and that the evidence supported return of the child because the circumstances which caused the child's removal no longer existed.

12

Where, as here, the juvenile court has ordered parental rights terminated, a parent has the right to seek review of claims of incompetent assistance of counsel. (*In re Carrie M*. (2001) 90 Cal.App.4th 530, 535.) "'In general, the proper way to raise a claim of ineffective assistance of counsel is by writ of habeas corpus, not appeal. [Citations.] . . . [A]n ineffective assistance claim may be reviewed on direct appeal [only] where "there simply could be no satisfactory explanation" for trial counsel's action or inaction. [Citation.]' [Citations.] Usually, however, '[t]he establishment of ineffective assistance of counsel most commonly requires a presentation which goes beyond the record of the trial. . . . Action taken or not taken by counsel at a trial is typically motivated by considerations not reflected in the record. . . . Evidence of the reasons for counsel's tactics, and evidence of the standard of legal practice in the community as to a specific tactic, can be presented by declarations or other evidence filed with the writ petition. [Citation.]' [Citations.]" (*In re Darlice C*. (2003) 105 Cal.App.4th 459, 463.)

Here, the evidence mother contends would have supported a request for returning S.A. to mother's custody was not litigated, and we cannot say on the basis of the record whether there *was* evidence which would have rendered it substantially probable that mother would have obtained a better outcome if her attorney had presented it. Accordingly, the issue must be raised, if at all, by means of habeas corpus. We note that a petition for a writ of habeas corpus asserting ineffective assistance of counsel in

13

connection with a section 366.26 hearing must be filed before the termination order becomes final.  (*In re Carrie M.*, *supra*, 90 Cal.App.4th at pp. 533-534.)

4.

MOTHER HAS NOT SHOWN THAT THE JUVENILE COURT ERRED IN FINDING THE BENEFICIAL PARENTAL RELATIONSHIP EXCEPTION NOT APPLICABLE

Mother contends that the juvenile court should have found that the beneficial parental relationship exception to the statutory preference for adoption applied and that the order terminating her parental rights must be reversed.

"Adoption must be selected as the permanent plan for an adoptable child and parental rights terminated unless the court finds 'a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances:  [¶]  (i)  The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship. . . .'  (§ 366.26, subd. (c)(1)(B).)"  (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314 (*Bailey J.*).)  Under these provisions, "the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a *compelling* reason for finding that termination of parental rights would be detrimental to the child.  The specified statutory circumstances . . . 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.'"  (*In re Celine R.* (2003) 31 Cal.4th 45, 53, italics added.)  "'Adoption is the Legislature's first

choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.'" (*Ibid.*)

The parent has the burden of establishing by a preponderance of the evidence that a statutory exception to adoption applies. (*Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) The parent must show both that a beneficial parental relationship exists *and* that severing that relationship would result in great harm to the child. (*Id.* at pp. 1314-1315.) A juvenile court's finding that the beneficial parental relationship exception does not apply is reviewed in part under the substantial evidence standard and in part for abuse of discretion: The factual finding, i.e., whether a beneficial parental relationship exists, is reviewed for substantial evidence, while the court's determination that the relationship does or does not constitute a "compelling reason" (*In re Celine R.*, *supra*, 31 Cal.4th at p. 53) for finding that termination of parental rights would be detrimental is reviewed for abuse of discretion. (*Bailey J.*, at pp. 1314-1315; accord, *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622.)

Here, mother asserts that she and S.A. had a bond developed through the first 14 months of S.A.'s life, and that S.A.'s subsequent bond with her grandparents, the prospective adoptive parents, did not diminish mother's bond with S.A. We agree with mother that the existence of a beneficial parental relationship does not depend on the child having a primary attachment to the parent or on the parent being the child's primary caretaker. Rather, the exception may apply if the child has a "substantial, positive emotional attachment" to the parent. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

15

However, even if we assume that the evidence showed that S.A. shared a positive bond with mother, the ultimate question we must decide is whether the juvenile court abused its discretion by failing to find that termination of parental rights would be so detrimental to S.A. as to overcome the strong legislative preference for adoption. That decision is entrusted to the sound discretion of the juvenile court. (*Bailey J.*, *supra*, 189 Cal.App.4th at pp. 1314-1315.) We cannot find an abuse of discretion unless the juvenile court exceeded the bounds of reason. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319.) "'"When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*Id*. at p. 319.) Mother does not address this prong of the exception. However, there was no abuse of discretion because mother failed to show any compelling reason for applying the exception.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:


RAMIREZ
P. J.


HOLLENHORST
J.

16