Filed 3/15/21  In re C.J. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re C.J., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B306722 (Super. Ct. No. 18JD00285) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>B.J. et al.,<br><br>    Defendants and Appellants. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 25, 2021, be modified as follows:

1.  On page 11, the last paragraph is deleted and replaced with:

Parents contend that the orders must be reversed because the Department purposely reduced Mother's visitation to strengthen C.J.'s ties with her caregivers and to hinder Mother's ability to establish the beneficial relationship exception. We decline to consider this contention because it was not sufficiently supported by argument or citation to legal authority, was not identified in a heading in Mother's opening brief, and because, as discussed above, Mother was provided reasonable visitation. (*People v. Aguayo* (2019) 31 Cal.App.5th 758, 768; *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294.)[1]

There is no change in judgment.
Appellant's petition for rehearing is denied.

_____

TANGEMAN, J.        YEGAN, Acting P. J.        PERREN, J.

_____

[1] Father makes no independent challenges to the judgment but contends that if the order terminating Mother's parental rights is reversed, the order terminating his rights must also be reversed. (Cal. Rules of Court, rule 5.725(a)(1); *In re DeJohn B.* (2000) 84 Cal.App.4th 100, 110 [rule not automatic].) Because we affirm as to Mother, we also affirm as to Father.

Filed 2/25/21  In re C.J. CA2/6 (unmodified opinion)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re C.J., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B306722 (Super. Ct. No. 18JD00285) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. B.J. et al., Defendants and Appellants. | |

B.J. (Father) and K.A.J. (Mother) appeal from the juvenile court's orders (1) denying Mother's petition to change the order terminating her reunification services as to their daughter

C.J. and to increase in-person visitation (Welf. & Inst. Code,[2] § 388) and (2) terminating their parental rights and selecting an adoption plan (§ 366.26). They assert the juvenile court abused its discretion when it declined to reinstate reunification services to Mother, substantial evidence did not support rejection of the beneficial relationship exception (§ 366.26, subd. (c)(1)(B)(i)), and Mother's due process rights were violated when the court made an inadequate visitation order.[3] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

C.J. was born in November 2017. In January 2018, Mother was intoxicated, passed out, and unresponsive. C.J., who was two months old, was lying next to her with an empty bottle of vodka nearby. In another incident that month, Mother was drinking, "stumbling around," and arguing with Father when she attempted to get her keys and leave with C.J. In April, Mother passed out again from intoxication while caring for C.J. In August, Mother was incarcerated for violating her DUI probation with a new DUI. The same month, Mother and Father engaged in domestic violence in front of C.J. A bottle of vodka was found in her crib.

Father was arrested in July for meeting for lewd purposes an undercover officer posing as a 15-year-old girl. (Pen. Code, § 288.4, subd. (b).) He was sentenced to three years in state prison. He texted another person describing sexual contact

---

[2] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

[3] Father's appeal from the denial of his oral motion to dismiss based on lack of jurisdiction has been abandoned. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

he had with C.J. and future sexual contact he wished to have with her.

The San Luis Obispo County Department of Social Services (Department) filed a petition on C.J.'s behalf. (§ 300, subds. (b)(1), (d) & (g).) The court sustained the petition in November 2018, adjudged C.J. a dependent of the juvenile court, removed custody from the parents, and placed C.J. with a paternal aunt. (§§ 300, subds. (b)(1) & (d), 361, subd. (c)(1).) The court ordered reunification services for both parents, supervised visitation for Mother, and no contact with Father.

The court returned C.J. to Mother in January 2019. In April, the court terminated reunification services for Father because he failed to participate in court-ordered treatment.

Mother stopped urine testing and treatment in June. On August 2, a social worker found Mother passed out on the couch with the front door wide open, beer cans and wine bottles throughout the house, and C.J. alone and crying in the bedroom. After several attempts to wake Mother, she got up and stumbled to the bedroom. C.J. had a bump on her head; Mother claimed it happened at the house of a relative, who denied knowledge. C.J. was removed from Mother's custody and placed with a relative.

Mother admitted she relapsed in July and was "off the rails" through October. She resumed treatment in August but discontinued again in mid-September. She resumed treatment in October.

In January 2020, the court found there was not a substantial probability of returning C.J. at the 18-month date of February 28, 2020. The court terminated Mother's reunification services and set a hearing to terminate parental rights. (§ 366.26.)

In May, Mother filed a request to change court order. (§ 388.) She alleged she was participating in mental health, substance abuse, and parenting programs. She declared that she had been sober for 11 months before a relapse in July 2017. She stated she had been sober from August 2018 through July 2019. She suffered a relapse in July 2019 but now claimed she had been sober since August 7, 2019. She requested the court order family maintenance or reinstate unification services to her. She also requested in-person visitation.

At combined hearings on Mother's modification request (§ 388) and termination of parental rights (§ 366.26), Mother testified she was attending eight AA meetings a week and serving as secretary at two of them. She agreed that C.J. received primary care from her current caregivers for the preceding 10 months.

A specialist with drug and alcohol services testified that Mother had gained insight regarding her alcoholism and "finally figured . . . out" that recovery is a lifetime process. Mother obtained a sponsor as part of a relapse prevention strategy.

Mother's marriage and family therapist testified that Mother was abstaining from alcohol and was engaged in AA and other activities necessary to maintain recovery. She testified that Mother was close to one year of abstinence, at which point the rate of lifetime sobriety doubles.

An adoptions social worker for the Department opined that it would not be in C.J.'s best interest to return custody to Mother because her history of relapses would place C.J. at too great a risk of being removed again. C.J.'s caregivers preferred adoption to guardianship because it provided stability

4

and avoided the worry that a parent might petition to dissolve the guardianship.

The court considered C.J.'s history. She was placed with her paternal grandfather in August 2018 for approximately three months. In November, she lived with Mother at a residential treatment facility for 30 days. For the next approximately six months, C.J. and Mother lived in the same home as a paternal aunt and grandmother. For the next three months, Mother and C.J. lived together in an apartment. C.J. was removed in August 2019 and returned to the home of her aunt and paternal grandmother, where she remained.

The trial court denied the section 388 petition. The court noted that Mother continued with therapy even after services were terminated. The court stated that while "this may be the time" that Mother remains sober, it would not take the chance of another relapse that would place C.J. at risk of harm and further trauma. The court found that C.J. was well bonded with both Mother and the custodial family members. The parental aunt wanted to adopt C.J. The court found it unlikely that Father would be released from prison soon and therefore permanency predominated. The court found it was likely C.J. would be adopted and terminated parental rights.

## DISCUSSION

### *Section 388 petition*

When reunification services have been terminated and a section 366.26 hearing set, the focus of the case shifts from "the parents' interest in the care, custody and companionship of the child . . . 'to the needs of the child for permanency and stability.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

"[T]here is a rebuttable presumption that continued foster care is in the best interests of the child." (*Ibid*.)

"'Section 388 provides the "escape mechanism" . . . to allow the court to consider new information.'" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.) The petitioner must show by a preponderance of the evidence "'a genuine change of circumstances'" and that "'undoing of the prior order would be in the best interests of the child. [Citation.]'" (*Ibid*.)

We review denial of a section 388 petition for abuse of discretion, which is not shown unless the trial court made ""'an arbitrary, capricious, or patently absurd determination [citations].'"" (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) We find no abuse of discretion here.

In determining a section 388 motion, factors to consider include: "(1) [T]he seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532, italics original (*Kimberly F.*).) In *Kimberly F.*, dependency was based on an unsanitary house, a problem the parent had resolved. (*Id*. at pp. 521-522, 532.) Here, dependency was based on a more serious and intractable problem, including Mother's loss of consciousness from alcohol abuse that left C.J. unsupervised and unprotected. (See *In re K.B.* (2021) 59 Cal.App.5th 593, 600 ["mother routinely disappeared from her children's lives" by falling asleep from substance abuse].) The trial court properly concluded that

6

Mother had a "deeply ingrained alcohol addiction," and that when Mother drinks, she drinks to excess and places C.J. at risk.

As in *Kimberly F.*, C.J. had ties to both Mother and the family members who had taken care of her for much of her life. And while Mother made recent progress toward recovery, the dependency was punctuated by recurrences endangering C.J. Despite eight months of reunification services and nine months of family maintenance services, Mother failed to demonstrate her ability to protect C.J. on a sustained basis.

"[I]n order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308, disapproved on another point as stated in *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 112.) Reunification services may not exceed six months if the child is under the age of three, unless the court finds a substantial probability of return in an extended 12- or 18-month period. (§§ 361.5, subd. (a)(1)(B), (a)(3)(A), 366.21, subd. (g); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.) In January 2020, the court found no substantial probability that C.J. could be returned within 18 months.

The juvenile court did not abuse its discretion in concluding that Mother failed to establish that reopening reunification services would be in C.J.'s best interest and would "advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527; Cal. Rules of Court, rule 5.570(e)(1) & (i).) C.J.'s "best interests [were] not to further delay permanency and stability in favor of rewarding Mother for her hard work and efforts to reunify." (*In re J.C.*, at p. 527.)

7

Mother's frequent relapses presented a realistic danger that C.J. would be traumatized by yet another removal from custody.

### *Beneficial relationship exception*

Mother contends that the beneficial relationship exception (§ 366.26, subd. (c)(1)(B)(i)) applies and the court erred in terminating parental rights for adoption rather than granting guardianship. We disagree.

There is a split of authority as to the standard of review regarding the beneficial relationship exception. (*In re Caden C.* (2019) 34 Cal.App.5th 87, 106, review granted July 24, 2019, S255839).) Recent cases review the factual issue of whether a beneficial parental relationship exists for substantial evidence, and whether termination would be detrimental to the child for abuse of discretion. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315; *In re E.T.* (2018) 31 Cal.App.5th 68, 76.) Utilizing either standard of review, we find no error.

Mother contends the purpose of the beneficial relationship exception is to preserve visitation and does not encompass custody. She is mistaken. The beneficial relationship provision is an exception to the statutory preference to terminate parental rights in favor of adoption. (§366.26, subd. (b)(1).) Section 366.26, subdivision (c)(1) provides: "If the court determines . . . that it is likely the child will be adopted, the court shall terminate parental rights . . . unless either of the following applies: [¶] . . . [¶] (B) The court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." The trial court properly applied the statute.

8

The exception requires the parent prove both regular visitation and that the relationship with the child "'""promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents."'""" (*In re Breanna S.* (2017) 8 Cal.App.5th 636, 646.) A parent who has not reunified "'may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.'" (*Ibid.*, italics original.) The exception applies only in "'an extraordinary case'" because the permanent plan hearing occurs after the court has found the parent is unable to meet the child's needs. (*Ibid.*)

Mother met the first prong of the exception by "maintain[ing] regular visitation and contact with the child." (§ 366.26, subd. (c)(1)(B)(i).) But she did not show that terminating parental rights "would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).)

Substantial evidence supported the juvenile court's conclusion that the exception did not apply, and the court did not abuse its discretion in reaching that conclusion. An emotional bond with the child is insufficient; "the parent must show that he or she occupies a 'parental role' in the child's life" and that the child would be "'greatly harmed'" by severing the relationship. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.) C.J. was two years eight months old at the time of the final order and had spent more than half her life in foster care with parental relatives. Although C.J. had bonded with both Mother and the caregivers, the Department reported that C.J. received primary care from her caregivers for the preceding 10 months and

9

"look[ed] to them for ongoing support, security, and parenting." The court properly concluded that she should not be denied the benefits of permanency by continuing to wait for Mother to establish sustained sobriety.

### *Visitation*

Mother contends the court's failure to order more visitation, and limiting her to visitation by video, violated her due process rights. She asks that we reverse the termination order and remand for six more months of visitation, to be followed by another section 366.26 hearing. (*In re David D.* (1994) 28 Cal.App.4th 941, 956.) Her contention lacks merit.

When the court terminates reunification services and sets a section 366.26 hearing, it must allow visitation unless it would be detrimental to the child. (§ 366.21, subd. (h).) Visitation was provided here.

Starting in August 2019, Mother was allowed weekly one-hour supervised visits. After the termination of unification services in January 2020, she had one-hour supervised visits twice a month. In March 2020, based on the COVID-19 pandemic, the Department allowed only electronic visitation. Mother visited C.J. six times by video between March and May for about 90 minutes each time. Mother talked to C.J., read to her, and they colored together. On June 24, the court reinstated in-person visits. Mother had two in-person visits and C.J. was excited to see her.

Mother contends that the failure to provide more in-person visits violated her right to due process. "In substantive due process law, deprivation of a right is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation that is reasonably applied; that is, the law

10

must have a reasonable and substantial relation to the object sought to be attained." (*In re Marilyn H., supra*, 5 Cal.4th at pp. 306-307.) Due process was satisfied here by giving Mother reasonable visitation, a reasonable period to reunify, and an opportunity to show changed circumstances. (*Id.* at p. 309.)

This case is not like *In re David D., supra*, 28 Cal.App.4th 941, or *In re S.S.* (2020) 55 Cal.App.5th 355, 377. In those cases, the parent was not allowed sufficient visitation to maintain or demonstrate a bond with the child. In contrast here, Mother was allowed regular contact and positive bonding experiences with C.J. Mother has not shown that more in-person visits would have allowed her to establish that terminating parental rights was detrimental.

Parents contend that the orders must be reversed because the Department purposely reduced Mother's visitation to strengthen C.J.'s ties with her caregivers and to hinder Mother's ability to establish the beneficial relationship exception. We decline to consider this contention because it was raised for the first time in their reply briefs (*In re Ricky H.* (1992) 10 Cal.App.4th 552, 562), and because, as discussed above, Mother was provided reasonable visitation.[4]

---

[4] Father makes no independent challenges to the judgment but contends that if the order terminating Mother's parental rights is reversed, the order terminating his rights must also be reversed. (Cal. Rules of Court, rule 5.725(a)(1); *In re DeJohn B.* (2000) 84 Cal.App.4th 100, 110 [rule not automatic].) Because we affirm as to Mother, we also affirm as to Father.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

YEGAN, Acting P. J.

PERREN, J.

12

Charles S. Crandall, Judge

Superior Court County of San Luis Obispo

_____

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant B.J. (Father).

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and Appellant K.A.J. (Mother).

Rita Neal, County Counsel, Timothy McNulty, Deputy County Counsel, for Plaintiff and Respondent.