Filed 5/13/25

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re R.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.H., <br><br> Appellant. | E083229 <br><br> (Super.Ct.Nos. J296846 & J296847) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Appellant.

Michelle D. Blakemore, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

In this juvenile dependency proceeding regarding R.M. and N.M. (the children), the juvenile court found that continued visits with R.H. (the children's maternal

grandmother; hereafter "maternal grandmother") was detrimental to the children's physical or emotional well-being and ordered that maternal grandmother have no further visits. Maternal grandmother petitioned the juvenile court pursuant to Welfare and Institutions Code[1] section 388 to reinstate her visits, but the court summarily denied the petition because it found she had not stated any new evidence or changed circumstances, or that visits with her would be in the best interest of the children.

On appeal, maternal grandmother claims the finding that her visits were detrimental to the children and the order denying her further visitation violated her constitutional right to due process because the juvenile court acted on the oral motion of counsel for the children, and without first complying with the procedural requirements for modifying or changing an order pursuant to section 388. Because grandparents like maternal grandmother who are not acting in a parental role have no constitutionally protected right to visit dependent children, maternal grandmother's due process challenge must fail. In addition, as a matter of state law the juvenile court had the authority to act on its own motion to modify the visitation order that applied to maternal grandmother, notwithstanding minor's counsel failure to petition the court pursuant to section 388, and we find the error, if any, was harmless.

In addition, grandmother argues the juvenile court's order that she receive no further visitation with the children and the order summarily denying her section 388 petition were abuses of discretion. We conclude substantial evidence supports the court's

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

2

finding that visits with maternal grandmother were detrimental to the children's well-being, and that the orders that she receive no further visits and summarily denying her petition were not abuses of discretion. Therefore, we affirm the orders.

I.

FACTS AND PROCEDURAL BACKGROUND

After investigating a referral for possible neglect of the children by mother, San Bernardino County Children and Family Services (CFS) removed the children from mother's home and filed petitions in the juvenile court alleging the children were dependents under section 300.

At the detention hearing, the juvenile court ordered the children detained and ordered the parents to receive visitation. The court also granted CFS the authority to provide visits to relatives, "as appropriate."

In its report for the combined jurisdiction/disposition hearing, CFS recommended the juvenile court find true the allegations in the petition, detain the children, and order family reunification services for both parents. Both parents were interviewed and denied having concerns with themselves while expressing concerns about the children's safety with the other parent. Father appeared to be forthcoming about concerns related to his responsibility for the children's removal, whereas mother appeared to minimize any concerns regarding her conduct. Mother identified her parents as her support network.

Both children reported they felt safe in mother's home, but it was sometimes scary when mother and her live-in boyfriend fought. They also reported feeling safe with father.

When interviewed by the social worker, maternal grandmother reported she often watched the children and picked them up from school. Maternal grandmother indicated father visited the children two days a week for about four hours, but it was paternal grandmother who would care for the children during his visits. Maternal grandmother said she believed father "is trying to take [mother] down because of the child support issue." When the social worker asked if the children were safe with father, maternal grandmother replied, "I don't know. I feel he needs to be supervised. I am not sure if they're safe, but he needs to drug test." She also said she believed father was "sitting on the sidelines waiting for [mother] to fail."

At the combined jurisdiction/disposition hearing, the juvenile court continued the matter for mediation and a contested hearing on CFS' recommendations. The court reiterated authority for CFS to provide relative visits, as appropriate.

After the mediation, both parents agreed to receive family reunification services. Father indicated he had no objection to the children's current placement in paternal grandmother's home. Mother indicated she was requesting the children be returned to her care on family maintenance in the home of the maternal grandmother.

During the continued hearing, both parents waived their rights to a contested hearing and submitted to the allegations and recommendations for disposition as stated in

the mediation report. The juvenile court found the allegations to be true, declared the children to be dependents of the juvenile court, ordered them removed from the parents' custody and directed CFS to provide the parents with reunification services and visits. Counsel for CFS informed the court that the children had been placed in the paternal grandmother's home and the paternal grandfather was assisting in caring for the children. The court again reiterated CFS had authority to provide for relative visits, as appropriate.

On September 13, 2023, CFS provided the juvenile court with an information update. The social worker reported both parents had complied with their case plans, they were doing well with their family reunification services, and their visits with the children were consistent and going well. However, the social worker reported she had expressed concerns to mother about maternal grandmother's "constant interference in the visitation schedule set up for the parents." Mother said she had decided to limit contact due to maternal grandmother's "over involvement." Mother reported the ways "she would prevent . . . the maternal grandmother [from] interfering with her ability to coparent with the father appropriately."

In the report filed on December 6, 2023, for the six-month review hearing, CFS recommended the children be returned to father's physical custody with family maintenance services and mother continue to receive family reunification services. The children had been placed in the home of their paternal grandmother, which "allows for the children to remain with family and have contact with extended family." The social worker reported the paternal grandmother had provided the children with a safe and

stable home, she was willing to make any changes necessary to accommodate visits by mother and father, and she had demonstrated she was supportive of reunifying the children "with either parent as long as it is deemed safe." The social worker reported visits with both parents were going well and both children said they enjoyed their visits and felt safe with both parents.

The social worker reported that during a July 2023 meeting to address visits with the children and to establish a support network for the family, it became clear that father and maternal grandmother had a difficult relationship. Father and maternal grandmother were asked to focus on the topics at hand and not "point fingers." The parents "had to intervene and address the maternal grandmother about how her open anger directed towards the father and the paternal side of the family was going to create emotional distress for the children." After discussing how the children were adjusting to their placement in paternal grandmother's home, everyone at the meeting was given an opportunity to address any concerns. Maternal grandmother "blurted out her dislike for the father." The meeting devolved into everyone loudly talking over each other, so the meeting was terminated, and another one was set to discuss issues regarding visitation.

In subsequent months, the social worker had several meetings with the parents and with the maternal grandmother to discuss visitation. Father reported he was concerned maternal grandmother's repeated requests to meet with CFS and her demands for visitation days was interfering with his own visitation. Father said, "he should be able to take his children to a movie or a school event without the maternal grandmother calling

CFS [and] demanding that his visits with his children be stopped." The social worker reported she had repeatedly met with maternal grandmother and had told her the parents had case plans "and that visitation is high on the priority list for parents as part of the reunification process." In addition, mother had informed the social worker that she had attempted to speak to maternal grandmother about her interfering with visits, but the conversations did not go well.

During an October 2023 meeting with the parents and both grandmothers to discuss visitation, maternal grandmother was again told that visitation by the parents "was a priority." Maternal grandmother questioned why father had been given more visitation than mother, when in the past she and mother had cared for the children. The meeting was canceled when it devolved into loud and disrespectful name-calling.

The next month, a failure of communication between the paternal and maternal grandmothers, and N.M.'s desire not to visit with maternal grandmother that day, resulted in an altercation when both grandmothers tried to pick up the children from their school on a Friday. In a subsequent meeting with mother and maternal grandmother, the social worker and a supervisor told maternal grandmother that CFS would not accede to her demands that Fridays were exclusively hers for visits and that she be provided with documentation to that effect. "She was informed that the parents' visitation schedules have changed as they have progressed in the case and when the children request to see their parents on a Friday that may interfere with her desire to take the children." Maternal grandmother was also informed that N.M. had said he is not afraid of either

7

grandmother "but he does not want to spend time with the maternal grandmother." Separately, the social worker spoke to the children about the altercation. R.M. said she was not afraid or concerned about the incident, but N.M. said he was scared. N.M. had not planned to go with the maternal grandmother that day, but when the paternal grandmother left and mother stood next to him and said nothing, he had no choice but to go with maternal grandmother.

The social worker reported she was concerned that mother had difficulty setting boundaries with maternal grandmother. When she was angry or frustrated about the case, mother would call the maternal grandmother—which often resulted in the maternal grandmother excessively calling and texting the social worker and demanding to be seen. Mother had made progress in her case plan, and she was nurturing and caring toward the children. But mother had not adequately addressed the fact that, although N.M. was happy to see her during visits, he did not feel safe having unsupervised visits with her or visits that included maternal grandmother. Mother initially reported she had no idea why N.M. did not want to visit with maternal grandmother. But when the social worker informed mother that N.M. had said he had told mother several times why he did not want to stay at maternal grandmother's home, mother responded, "Well I know he has[,] but its not because he is afraid of her. Sometimes my mother would just show up at my house and take them."

During the scheduled six-month review hearing conducted December 13, 2023, at which mother was present, the juvenile court granted minor's counsel's request to set the

matter for a contested hearing on the social worker's recommendation that the children be returned to father's custody. In addition, minor's counsel requested the court find that based on the information contained in the social worker's report, visits with maternal grandmother were detrimental to the children. "It's very concerning to me that she is having confrontations with the current caregiver at the children's school. The children have also expressed that they do not want to have visits with her, and I do believe that her behaviors and her demanding of visits is interfering with the parents' potential to reunify." The court found visits with the maternal grandmother were detrimental to the children's physical or emotional well-being and there would be "no visits for her." The court also granted a request that the children's caregiver be authorized to release the minute order from the hearing to the children's school "so they know [maternal] Grandmother cannot be there." Mother's counsel indicated "Mom has no issue" with the latter ruling.

On January 12, 2024, maternal grandmother filed a petition pursuant to section 388 seeking to change the juvenile court's finding that visitation with her was detrimental to the children and its ruling that she have no further visitation. Maternal grandmother requested the court enter a new visitation order for relatives that has clear guidelines to avoid further conflict between her and the paternal grandparents and school officials. Maternal grandmother contended she had been a consistent source of comfort and joy to the children and had taken care of them three days a week, but, other than vaguely alleging the lack of visits had created a vacuum in the children's lives, she stated no

9

changed circumstances that had arisen since the court's December 13, 2023, order. The only new evidence she presented was a letter from the principal of the children's school that described the incident on campus in which both grandmothers engaged in an inappropriate verbal altercation, resulting in both being banned from volunteering on campus for safety reasons; a letter from the parent of another student about how maternal grandmother's volunteer work benefited the school and its students; and a letter from a family friend that accused in vague terms father's family of manipulating the children. Moreover, when addressing whether a change in order would be in the best interest of the children, the petition stated in general terms that her continued involvement in the children's lives was critical to their development. At most, the petition alleged a sudden change in the children's routine "*can* be disorienting and emotionally disruptive," and unnecessary restrictions on her involvement in their lives "*could* exacerbate existing tensions" in the family "and *potentially* create confusion for the children." (Italics added.)

On January 19, 2024, the juvenile court found maternal grandmother's petition did not state new evidence or changed circumstances, and that the proposed change in order was not in the best interest of the children. Therefore, the court summarily denied the petition.

Maternal grandmother appealed.[2]

---

[2] Maternal grandmother's notice of appeal (Judicial Council Forms, form JV-800) filed February 9, 2024, stated she was appealing from an order entered January 19, 2024, which corresponds to the juvenile court's order summarily denying her section 388

*[footnote continued on next page]*

II.

DISCUSSION

A.     *The Juvenile Court Did Not Violate Maternal Grandmother's Due Process Rights.*

Maternal grandmother argues minor's counsel was required to file and serve a petition for change of order pursuant to section 388 before the juvenile court could find that visits with her were detrimental to the children and should cease, and the failure to comply with that procedure violated her due process rights.  We must reject this claim of error because maternal grandmother fails to make the threshold showing of identifying a constitutionally protected interest that the juvenile court's order allegedly violated, and because the juvenile court had the authority to modify the relative visitation order even in the absence of a section 388 petition, so any state law error was harmless.

"The federal and state Constitutions forbid the government from depriving an individual of life, liberty, or property without due process of law.  (U.S. Const., 14th Amend. ['nor shall any State deprive any person of life, liberty, or property, without due

---

petition.  However, although she correctly checked the box for "**Section 388** (request to change court order)" when indicating the *type* of order she was appealing, she erroneously stated the *date* of the hearing (there was no hearing) was December 13, 2023, which corresponds to the juvenile court's earlier order that she receive no further visitation.

The notice of appeal was timely filed less than 60 days after the entry of the December 13, 2023, *and* January 19, 2024, orders.  (Cal. Rules of Court, rule 8.104(a).)  Moreover, because it is reasonably clear from the notice that maternal grandmother intended to appeal from both orders and not merely from the January 19, 2024, order, and because we perceive no prejudice to CFS from any ambiguity in the notice, we liberally construe the notice to address both orders.  (Cal. Rules of Court, rule 8.405(a)(3); *In re J.F.* (2019) 39 Cal.App.5th 70, 75-76.)

11

process of law']; Cal. Const., art. I, § 7, subd. (a) ['A person may not be deprived of life, liberty, or property without due process of law'].)" (*In re Harris* (2024) 16 Cal.5th 292, 322.) "'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."'" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212 (*Today's Fresh Start*), quoting *Mathews v. Eldridge* (1976) 424 U.S. 319, 348.)

"'The first inquiry in every due process challenge is whether the [party asserting the challenge] has been deprived of a protected interest in "property" or "liberty." [Citations.] Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.'" (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 214, quoting *American Manufacturers Mutual Insurance Co. v. Sullivan* (1999) 526 U.S. 40, 59.) If no protected interest (life, liberty, or property) has been implicated by the governmental act, "then the procedural protections of the due process clause do not come into play." (*Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1432.)

"Courts have generally rejected the proposition that grandparents, in their capacity as grandparents *and without more*, have a constitutionally protected interest in their relationship with the grandchild." (*In re C.P.* (2020) 47 Cal.App.5th 17, 27, italics added [holding application of absolute bar to placement of dependent child in grandparents' custody would violate due process if grandparents proved a *parental* relationship with the child].) "[A] noncustodial grandparent of dependents of the juvenile court . . . has no

12

substantive due process right to free association with the minors, or to maintain a relationship with them.  The rights of grandparents to assert control over their grandchildren are restricted by state juvenile jurisdiction to determine and protect the best interests of dependent minors.  (See *Troxel v. Granville* (2000) 530 U.S. 57, 60, 64-66, 69-73 . . . [grandparents have no constitutional right to visitation over the objections of fit, custodial parents]; *Miller v. California* (9th Cir. 2004) 355 F.3d 1172, 1175-1176 [despite their de facto parent status under California law, noncustodial grandparents of children who are dependents of the juvenile court have no substantive due process constitutional right to family integrity and freedom of association with their grandchildren]; *Mullins v. Oregon* (9th Cir. 1995) 57 F.3d 789, 791, 793-797 [grandparents do not have any constitutionally protected substantive due process or other liberty interest in the adoption of their children's offspring].)"  (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1508.)

Visitation by grandparents is governed by statute.  (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219.)  A grandparent does not have an absolute right to visit a dependent child, only the right to have the juvenile court consider whether such visitation shall occur.  (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1118; *In re J.T.* (2014) 228 Cal.App.4th 953, 962.)  "If the court has ordered removal of the child from the physical custody of the child's parents pursuant to Section 361, the court shall consider whether the family ties and best interest of the child will be served by granting visitation rights to

13

the child's grandparents."[3]  (§ 361.2, subd. (i); see Cal. Rules of Court, rule

5.695(a)(7)(C); see also § 16507, subd. (a) [Family reunification services provided by

social services agency "shall include a plan for visitation of the child by his or her

grandparents, where the visitation is in the best interests of the child and will serve to

maintain and strengthen the family relationships of the child."].)

Here, there is no question the juvenile court had considered visitation with

maternal grandmother because it had previously authorized CFS to provide for visits with

relatives "as appropriate."  In her reply brief, maternal grandmother no longer argues she

has a *constitutional* right to continue visiting the children, and instead argues "the

juvenile court gave her that right" and it could not be taken away without complying with

the procedural requirements of section 388.  But the court never affirmatively ordered

that maternal grandmother (or any other relative) be given visits or otherwise confer on

them the right to visit the children.  At most, the juvenile court authorized CFS to

provide, as appropriate, visits to relatives.  Because maternal grandmother—who never

had custody of the children and never claimed to have had a parental relationship with

them—had no protected interest in continued visits, she simply has not demonstrated the

juvenile court violated her due process rights when it terminated her visits on the oral

---

[3]  Additionally, section 362.4 authorizes the juvenile court to order visitation between a child and a grandparent when terminating dependency jurisdiction.  (*In re J.T.*, *supra*, 228 Cal.App.4th at p. 962.)  Under that statute, "[i]f the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child . . . the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child."  (§ 362.4, subd. (a).)

request of minors' counsel and without requiring the formal filing and service of a section 388 petition.

Moreover, the juvenile court's ruling on the oral motion of minor's counsel was harmless under state law. "Section 385 provides that any court order in a dependency case 'may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article.' Section 386 mandates that the court refrain from exercising its discretion under section 385 unless the court has provided prior notice of the application to the social worker and the child's counsel of record or, if there is no counsel of record, to the child and his parent or guardian." (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 111, fn. omitted (*Nickolas F.*).)

"Section 388 applies when '[a]ny parent or other person having an interest' in a dependent child, or the child (collectively, party) seeks a modification of a previous order based on a change of circumstances or new evidence and the pertinent statutes do not otherwise provide for modification. [Citations.] It is the appropriate procedural mechanism to use when a party seeks modification of a previous order." (*Nickolas F.*, *supra*, 144 Cal.App.4th at p. 106.) "By its terms, section 388 applies only when a *party* petitions the court for modification based on new evidence or changed circumstances. Nothing in [*In re Marilyn H.* (1993) 5 Cal.4th 295[4]] or in the plain language of section

---

[4] In *In re Marilyn H.*, *supra*, 5 Cal.4th 295, the Supreme Court held that when a parent requests that the juvenile court modify an order based on changed circumstances, they must proceed pursuant to section 388. (*Id*. at p. 305.)

15

385 indicates that the Legislature intended to limit the juvenile court's authority to reconsider its previous orders to circumstances in which a party has filed a petition pursuant to section 388." (*Nickolas F.*, at pp. 114-115.)

"[T]he juvenile court has the authority pursuant to section 385 to change, modify or set aside its prior orders sua sponte. [Citations.] Under this section, the juvenile court may modify an order that contains a clerical error, but may also reconsider the substance of a previous order the court considers to have been erroneously, inadvertently or improvidently granted." (*Nickolas F.*, *supra*, 144 Cal.App.4th at p. 116.) The juvenile court must provide the parties with notice and an opportunity to be heard before reconsidering or modifying an order. (*Id*. at p. 98; see *id*. at p. 111, fn. 16.)

Whether we construe the oral motion of minor's counsel to be an invitation for the juvenile court to exercise its sua sponte authority,[5] or if we assume minor's counsel

---

[5] Although the juvenile court did not provide prior notice to the parties that it would act on its own motion to modify the relative visitation order as it applied to maternal grandmother, under the circumstances of this case the absence of notice was harmless. The parties to the proceeding were present at the hearing or represented at the hearing by counsel, they had the opportunity to be heard, and they entered no objections to the court's ruling.

Relatives are entitled to notice when a child is removed from the parents, to ensure the relatives are aware they may be considered for placement of the child. (§§ 309, subd. (e)(1), 361.3; see *In re Maria Q.* (2018) 28 Cal.App.5th 577, 591-592.) Generally, during the normal course of the proceedings only the parties, siblings, and caregivers are entitled to notice. "A party of record is a person named as a party to the proceedings or one who takes appropriate steps to become a party of record in the proceedings. [Citation.] A person does not become a party of record merely because his or her name and interest appear in documents filed with the court or are referenced in the judgment." (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715.) Here, maternal grandmother was not the children's caregiver, a party of record, or otherwise entitled to notice that the juvenile court would modify the relative visitation order. (See *In re Miguel E.* (2004) 120

*[footnote continued on next page]*

pursued the wrong procedural vehicle to modify the relative visitation order, we find no prejudicial error. Presumably, had minor's counsel filed a petition under section 388 to request a finding of detriment and to deny maternal grandmother additional visits, the petition would have relied on the same evidence of maternal grandmother's conduct and interference with visits as relayed to the juvenile court in the social worker's reports. As we conclude in the proceeding section, the juvenile court's determination of the merits of the oral motion "was fundamentally sound." (*Nickolas F.*, *supra*, 144 Cal.App.4th at p. 119.) "A trial court's judgment may not be set aside for procedural error unless the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) If the court had made the modification in this case sua sponte, through either its statutory authority pursuant to section 385, or its constitutional authority under California Constitution, article VI, section I, rather than pursuant to [the oral motion of minor's counsel], the result would have been the same." (*Nickolas F.*, at p. 119.) The procedural error, if any, did not affect the validity of the order or result in a miscarriage of justice. (*Ibid*.)

B.    *The Juvenile Court Did Not Abuse Its Discretion by Terminating Visits with Maternal Grandmother.*

Maternal grandmother also contends the juvenile court abused its discretion when it found her visits were detrimental to the children and denied her further visitation. We are not persuaded.

---

Cal.App.4th 521, 539 [grandparents who did not apply for or achieve de facto parent status "were merely relatives, not parties."].)

17

Until family reunification services are terminated, a primary goal of dependency proceedings is to safely reunify dependent children with their families.  (§§ 202, subd. (a), 16500.1, subd. (a); *In re T.G.* (2010) 188 Cal.App.4th 687, 696.)  Visitation between parents and dependent children "'is a critical component, probably the most critical component, of a reunification plan.'"  (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 673.)  Consistent with the well-being of the child, visitation with parents must be as frequent as possible.  (§ 362.1, subd. (a)(1)(A); Cal. Rules of Court, rule 5.695(f)(3).)  The juvenile court has authority to make "any and all reasonable orders" to promote the child's best interest (§ 362, subd. (a)), including fashioning appropriate visitation orders.  (*In re Kayla W.* (2017) 16 Cal.App.5th 409, 418; *In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180.)

Whether, and under what conditions, grandparental visitation occurs is within the juvenile court's discretion.  When determining whether to authorize visits by grandparents, the court's primary criteria is whether the best interest of the child will be served by such visits.  (§ 361.2, subd. (i); *In re J.P.*, *supra*, 37 Cal.App.5th at p. 1118 [Juvenile court may order visits with grandparents "if it is reasonably related to [the child's] care and is in his best interest."].)  The juvenile court can suspend or deny visitation with any relative whose conduct is detrimental to the minor's emotional and/or physical well-being.  (*In re F.P.* (2021) 61 Cal.App.5th 966, 973; *In re T.M.* (2016) 4 Cal.App.5th 1214, 1219-1220; *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1005; see § 362.1, subd. (a)(1)(B) ["No visitation order shall jeopardize the safety of the child."].)

18

If a grandparent unduly interferes with a parent's ability to regularly visit the dependent child—potentially jeopardizing family reunification—the court necessarily has discretion to restrict or deny additional visits by the grandparent.[6]

The juvenile court's visitation orders are reviewed for abuse of discretion. (*In re J.P.*, *supra*, 37 Cal.App.5th at p. 1119; *In re J.N.* (2006) 138 Cal.App.4th 450, 459.) "The abuse of discretion standard warrants that we apply a very high degree of deference to the decision of the juvenile court." (*In re J.N.*, at p. 459.) We determine whether the order exceeded the bounds of reason and, in so doing, we cannot substitute our judgment for that of the juvenile court. (*In re Caden C.* (2021) 11 Cal.5th 614, 641; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

A juvenile court's finding that visitation would be detrimental to the child is reviewed for substantial evidence. (*In re F.P.*, *supra*, 61 Cal.App.5th at p. 973.) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and '"substantial" proof of the essentials which the law requires in a particular case.'" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.) Our role in conducting a review for sufficiency of the evidence is limited. We must review the entire record in the light most favorable to the juvenile court's order and draw all reasonable inferences from the evidence that support it. We may not resolve conflicts in the evidence, reweigh the evidence, or second guess the juvenile court's express or

---

[6] In addition, the social services agency has a duty to make some effort to overcome obstacles to a parent receiving reunification services, including visits. (See *In re Alvin R.* (2003) 108 Cal.App.4th 962, 973.)

implied determinations regarding the credibility of witnesses. (*In re N.S.* (2020) 55 Cal.App.5th 816, 847; *In re K.B.* (2015) 239 Cal.App.4th 972, 979.)

Here, the record contains substantial evidence to support the juvenile court's finding of detriment. The children reported they felt safe with both parents and enjoyed visiting with them. But maternal grandmother's statements as reflected in the jurisdiction/disposition report indicate she questioned father's motives for reunifying with the children and his ability to safely visit them. The social worker reported maternal grandmother constantly interfered in the parents' visitation schedule, and mother reported she had to limit contact because maternal grandmother was interfering in mother's ability to coparent with father. Father also reported that maternal grandmother's constant and repeated demands for more visits and to meet with CFS staff about visits was interfering with his own ability to visit the children as frequently as possible.

During meetings between CFS staff and the family to discuss visitation issues and a support network for the children, maternal grandmother made clear her dislike for and lack of confidence in father, which resulted in the meetings being canceled after they devolved in heated arguing and name-calling. Although CFS staff told maternal grandmother on numerous occasions that visits by the parents were crucial to family reunification and a high priority, and despite mother's own attempts to intervene, maternal grandmother continued to question the frequency of father's visits and demanded more for herself, including demanding that CFS guarantee in writing that she would have exclusive visits on Fridays. The situation finally came to a head when a lack

of communication led to an altercation at the children's school when both grandmothers tried to pick up the children from school on a Friday.

From that evidence, the juvenile court could reasonably conclude maternal grandmother was unduly interfering with the parents' ability to visit the children, and that her interference might jeopardize family reunification to the detriment of the children. Moreover, although neither child said they were afraid of maternal grandmother, N.M. expressly stated "he does not want to spend time with the maternal grandmother." Although not dispositive, a child's own wishes and statements as reflected in the social worker's reports are strong evidence the juvenile court may consider when deciding whether relative visits would be detrimental to the child's well-being. (Cf. *In re I.E.* (2023) 91 Cal.App.5th 683, 694 [Child's wishes, though not determinative, "may be highly relevant evidence when determining whether termination of parental rights will be detrimental to the child."].)

Considering the substantial evidence that visits with maternal grandmother were detrimental to the children's physical or emotional well-being, we find the juvenile court's order that she have no further visits was not an abuse of discretion.

C.     *The Juvenile Court Did Not Abuse Its Discretion by Summarily Denying Maternal Grandmother's Section 388 Petition.*

Last, maternal grandmother argues the juvenile court abused its discretion when it summarily denied her section 388 petition because it found she had made an insufficient

21

showing of new evidence or changed circumstances and that a new order permitting her to visit the children would be in their best interests. We find no error.

"Section 388 allows a person having an interest in a dependent child of the juvenile court to petition the court to change, modify, or set aside a prior order on the grounds of changed circumstances or new evidence. (§ 388, subd. (a).)" (*In re R.F.* (2023) 94 Cal.App.5th 718, 728.) "A section 388 petition must make a prima facie showing of entitlement to relief in order to trigger the right to an evidentiary hearing on the petition. [Citation.] The petition may be denied without a hearing 'only if the [petition] fails to reveal any change of circumstance or new evidence which might require a change of order.'" (*Ibid.*; see Cal. Rules of Court, rule 5.570(d)(1) [Juvenile court may deny § 388 petition "ex parte" if it "fails to state a change of circumstance or new evidence that may require a change of order . . . or fails to show that the requested modification would promote the best interest of the child, nonminor, or nonminor dependent."].)

"A 'prima facie' showing [under section 388] refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.) "'"[T]he term 'new evidence' in section 388 means *material* evidence that, with due diligence, the party could not have presented at the dependency proceeding at which the order, sought to be modified or set aside, was entered."'" (*In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1195, italics added.) New evidence is material if it may require the juvenile court to

22

change the order. (See Cal. Rules of Court, rule 5.570(a)(7), (d)(1).) "Furthermore, the petitioner must show *changed*, not changing, circumstances." (*In re Mickel O*. (2011) 197 Cal.App.4th 586, 615.) "The case law's references to 'changed' and merely 'changing' circumstances are another way of describing the distinction . . . between changes that are material and those that are not. However expressed, the point is that section 388 requires a change that is relevant and substantial (rather than irrelevant or de minimis) when considered in light of all of the circumstances of the case." (*In re N.F*. (2021) 68 Cal.App.5th 112, 121, fn. 3.)

Although the juvenile court must liberally construe the petition in favor of its sufficiency (Cal. Rules of Court, rule 5.570(a)), "the allegations must nonetheless describe specifically how the petition will advance the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157; see *In re K.L.* (2016) 248 Cal.App.4th 52, 62; *In re Ramone R*. (2005) 132 Cal.App.4th 1339, 1349.) "If a petitioner could get by with general, conclusory allegations, there would be no need for an initial determination by the juvenile court about whether an evidentiary hearing was warranted. In such circumstances, the decision to grant a hearing on a section 388 petition would be nothing more than a pointless formality." (*In re Edward H*., *supra*, 43 Cal.App.4th at p. 593; see *ibid*. ["[V]ague and evasive section 388 petitions" do not trigger a hearing.].)

"We review a summary denial of a hearing on a modification petition for abuse of discretion. [Citation.] Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an

arbitrary, capricious or patently absurd determination." (*In re A.S.* (2009) 180 Cal.App.4th 351, 358.)

The juvenile correctly found maternal grandmother did not submit new evidence in support of her request for a new or different order. The letter from the school principal provided some additional facts regarding the altercation between the grandmothers, such as the fact they were both subsequently barred from volunteering on campus for safety reasons. But overall, the letter merely supplemented the social worker's report and did not call into question the remainder of the evidence recounted *ante* of maternal grandmother's constant interference in the parent's visitation and her persistent demands for additional visits. The letter from the parent of another student informed the juvenile court about maternal grandmother's positive contributions to the school, but it bore no relevance to the question of maternal grandmother's conduct regarding visitation. And the letter from the family friend contained no relevant facts whatsoever. Therefore, even if the evidence was new, it was not *material*. (*In re Matthew M.*, *supra*, 88 Cal.App.5th at p. 1195.)

Likewise, the juvenile court correctly found maternal grandmother did not allege changed circumstances. Maternal grandmother alleged that in the past she had been a consistent source of support for the children, but she only vaguely alleged that, since her visits ended, a vacuum had been created in the children's lives. She did not allege, for example, that the children had suffered in any concrete way from the absence of her visits. In other words, maternal grandmother did not sufficiently allege a material change

24

in circumstances, meaning a relevant and substantial change that mandated she once more be given visits.  (*In re. N.F.*, *supra*, 68 Cal.App.5th at p. 121, fn. 3.)

Finally, even if maternal grandmother had sufficiently alleged new evidence or changed circumstances, the juvenile court correctly found she had not alleged a reinstatement of her visits would be in the best interest of the children.  Maternal grandmother alleged in very general terms the benefits to children from having grandparents active in their lives, but she did not allege with any specificity how the children would benefit from continued visits with maternal grandmother.  At most she alleged that a sudden change in a child's routine "*can* be disorienting and emotionally disruptive," and that unnecessary restrictions on her involvement in the children's lives "*could* exacerbate existing tensions" within the family "and *potentially* create confusion for the children."  (Italics added.)  Those vague and conclusory allegations were insufficient to show that additional visits with maternal grandmother would be in the best interest of the children.  (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1157; *In re Edward H.*, *supra*, 43 Cal.App.4th at p. 593.)

In sum, we conclude the juvenile court did not abuse its discretion when it summarily denied maternal grandmother's section 388 petition.

## III.

## DISPOSITION

The juvenile court's orders denying maternal grandmother further visitation and summarily denying her section 388 petition are affirmed.

25

CERTIFIED FOR PUBLICATION

McKINSTER
Acting P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.